**William Truitt EASTERLING, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 66646.

Court of Criminal Appeals of Texas, En Banc.

Jan. 15, 1986.

Rehearing Denied April 16, 1986.

Jim Vollers, Austin, for appellant.

Travis B. Bryan, III, Dist. Atty., Jim W. James, III, W.W. Torrey, Asst. Dist. Attys., Bryan, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

McCORMICK, Judge.

Appellant was convicted of attempted voluntary manslaughter and punishment was assessed at ten years and a $5,000 fine.

The evidence showed that appellant and the victim had been married and later divorced. Shortly before the date of the offense, they had been considering a possible reconciliation. However, several days prior to the commission of the offense, the victim told appellant that she no longer loved him and did not want to see him again. On September 14, 1978, the victim was at a local bowling alley when she was confronted by appellant. Appellant physically compelled her to follow him outside. There a fight ensued between the two with both individuals trading blows. Eventually appellant was able to force the victim into his car. While both parties were inside the car and still struggling, appellant pulled a pistol out of the glove compartment and placed it against the victim's left ear. Being fearful, the victim stopped struggling but told the appellant that if he was going to shoot her he had better kill her. Appellant shot the victim in the left side of her head. Appellant then drove the victim to a nearby hospital. She was hospitalized for four days before being released.

Appellant was indicted for the offense of attempted murder. The court's charge to the jury submitted the issue of attempted murder as follows:

"Now, if you find from the evidence beyond a reasonable doubt that on or about the 14th day of September, 1978, in Brazos County, Texas, the defendant, William Truitt Easterling, did, with the intent to kill Charlotte Easterling, intentionally attempt to kill the said Charlotte Easterling by shooting her with a firearm, to wit, a gun, as set forth in the indictment, then you will find the defendant guilty of attempt to commit murder.

"Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant of the offense of attempted murder and consider whether he is guilty of the lesser offense of attempt to commit voluntary manslaughter."

The court then charged the jury on the lesser included offense of attempted voluntary manslaughter:

"If you find from the evidence beyond a reasonable doubt that on or about the 14th day of September, 1978, in Brazos County, Texas, the defendant, William Truitt Easterling, did, with the intent to kill the said Charlotte Easterling, intentionally attempt to kill the said Charlotte Easterling by shooting her with a firearm, to wit, a gun, but you further find and believe from all the facts and circumstances in evidence in this case, the defendant, in attempting to kill the said Charlotte Easterling, if he did, acted under the immediate influence of sudden passion arising from an adequate cause, then you will find the defendant guilty of an attempt to commit voluntary manslaughter."

The jury found appellant guilty of attempted voluntary manslaughter.

In his first ground of error, appellant argues that since the jury did not find him guilty of the greater offense of attempted murder, their action operated as an acquittal and barred a finding of guilt as to attempted voluntary manslaughter since the elements of the lesser offense were identical to the elements of the greater offense with the exception of the "sudden passion" element.

In *Bradley v. State*, 688 S.W.2d 847 (Tex.Cr.App.1985), this Court re-examined the relationship between murder and voluntary manslaughter. In a plurality opinion, this Court held that when the evidence in a case raises the issue that the accused "caused the death under the immediate influence of sudden passion arising from an adequate cause," voluntary manslaughter becomes a lesser included offense of murder. In those situations, the negation of

the issue of "sudden passion" becomes an "implied element" of murder. See also, *Lawrence v. State,* 700 S.W.2d 208, (Tex. Cr.App., 1985).

In *Smith v. State* (Tex.Cr.App. No. 956–82, delivered May 11, 1983, now pending on rehearing), Smith was indicted for murder, but convicted of the lesser included offense of voluntary manslaughter. On appeal, Smith contended that the jury must have found him not guilty of murder in order to consider the offense of voluntary manslaughter. We wrote:

"Indeed, an examination of the paragraphs of the charge ... demonstrates that as submitted to the jury in this case, a finding of guilt under the paragraph on voluntary manslaughter did require the jury to find all elements of murder.... The argument by appellant that the jury must have found appellant not guilty of murder in order to consider the offense of voluntary manslaughter is based on the assumption that the jury reached a decision under the murder paragraph before considering the voluntary manslaughter paragraph. When the phrasing of both paragraphs is considered, however, the only logical conclusion to reach is that the jury found all elements of murder, since the paragraph under which the verdict was returned required such a finding, and that the jury also found the element [of acting under the immediate influence of sudden passion arising from an adequate cause]." *Smith,* supra, slip opinion pp. 2–3. [material in brackets added]

■ We reach the same holding in the instant case. Reading the charge as a whole, it is clear that the jury found all the elements of attempted murder and found additionally that the State failed to disprove that the appellant acted under the immediate influence of sudden passion arising from an adequate cause. Thus the jury returned a verdict of guilty for the offense of attempted voluntary manslaughter. In no way can the verdict be construed to mean that the jury felt the State did not

prove up the elements of attempted murder. Appellant's first ground of error is overruled.

In his second ground of error appellant argues that the trial court committed reversible error in refusing to allow him to present evidence that the complainant had signed a letter saying that she did not desire to appear and testify against appellant and asking that the case be dismissed. During cross-examination of the complainant, she testified that several months after the offense, she accompanied appellant and their son to the office of defense counsel. There she met with appellant's attorney and told him that she did not want to have to go through a trial and she wanted the case against appellant dismissed. At that point in the complainant's testimony, defense counsel asked that the jury be removed and he proceeded to perfect a bill of exception. The substance of the bill was that the complainant asked appellant's counsel to write a letter to the district attorney asking that the case be dismissed. When the letter had been written, the complainant signed it. This letter was tendered into evidence as a part of the bill of exception. Out of the presence of the jury the court ruled that the complainant could be questioned along the line of her unwillingness to appear and testify but no testimony could be adduced concerning the letter. The jury was brought back into the courtroom and the complainant proceeded to testify:

BY DEFENSE COUNSEL

"Q. Ms. Easterling, it is a fact, is it not, that on the morning of June the 9th, 1979, you told me that you did not desire to appear and testify in this cause?

"A. Yes, I did.

"Q. And it is a fact, is it not, that on the morning of June the 9th, 1979, you requested that I do something so that it would not be necessary for you to appear and testify in this Cause Number 12,294, styled *The State of Texas versus William Truitt Easterling?*

"A. I did not request that.

"Q. All right.

"A. I believe you made mention of it.

. . . . .

"Q. And when you did ... Before you left the office, you knew that I was going to take some action to attempt to keep you from having to come up here and testify, didn't you?

"A. I knew you were going to bring a letter, yes."

Later on recross examination, defense counsel elicited the following from the complainant.

"Q. One or two more questions, if I may, Ms. Easterling. It is a fact, is it not, that shortly after Saturday, June the 9th, during the next week that you told Mr. Travis Bryan, III, the District Attorney of Brazos County, that you did not desire to appear and testify in this case and asked him to dismiss it?

"A. We talked about it on the telephone. I didn't ask him to dismiss it.

"Q. You didn't?

"A. No, that's not my position.

"Q. But you talked to him by telephone?

"A. Yes.

"Q. You told him at that time that you did not want it to go to trial?

"A. Yes, I did."

Appellant maintains that the admission of the actual letter was necessary to show first, the bias of the complainant and second, the fact that even the complainant had doubts about the validity of the charges filed against appellant. We disagree.

A similar contention was made in *Pope v. State,* 158 S.W. 527 (Tex.Cr.App.1913) (Opinion on Rehearing). This Court held that because such evidence would not render the defendant any less guilty nor aid the jury in determining the ultimate issue in the case, such evidence was properly kept away from the jury. In *Beltran v.*

*State,* 593 S.W.2d 688 (Tex.Cr.App.1980), an arson case, the defendant argued on appeal that the trial court had erred in not admitting the testimony of a sergeant from the Austin Police Department who would have testified that he made a recommendation that charges of criminal mischief be filed against the accused, rather than arson charges. Once again this Court held that such testimony would not have been relevant to any issue in the case. We further found that in any event such a recommendation would not have been binding on the district attorney's office or the grand jury.

We are compelled to reach the same holding here. The fact that the complainant signed a letter requesting that the case against appellant be dismissed does not go to any issue in the case, nor does it show, as appellant contends, the bias of complainant. This is especially true in light of the victim's later testimony that her decision not to prosecute arose out of the fact that her son told her that she was not being a good mother if she sent his father, the appellant, to jail. Furthermore, reading the testimony of the complainant as a whole, it is clear that the import of what appellant was trying to convey to the jury was in fact conveyed to the jury. We find no error. *Johnson v. State,* 583 S.W.2d 399 (Tex.Cr.App.1979). Appellant's second ground of error is overruled.

In his third ground of error, appellant argues that he should have been permitted to present evidence that the complainant had filed a civil suit for damages based on the incident involved in this prosecution. The record shows that while appellant was making his bill of exception with regards to the letter mentioned above, the following testimony was elicited:

"Q. And it is true, is it not, that in the course of that discussion or conference I advised you that you had an attorney, Mr. J.R. McCracken, who represented you in your claim for monetary damages in a civil suit and that I wouldn't discuss any civil action with you?

"A. Yes.

"Q. And I told you that I liked to keep my old skirts as clean as possible, didn't I?

"A. I don't remember that."

Following the completion of the appellant's bill of exception, the court ruled that appellant would not be allowed to "talk about the letter or the civil matter."

■ We note initially that appellant never established in his bill that the complainant had a civil action pending against appellant which arose out of this offense. It is firmly established that in order to complain of the exclusion of evidence, the record must indicate what the evidence would have been. When such a showing has not been made, nothing is presented for review. *Stewart v. State*, 686 S.W.2d 118 (Tex.Cr.App.1984); *Rumbaugh v. State*, 629 S.W.2d 747 (Tex.Cr.App.1982). Second, it appears from the entire content of appellant's bill of exception, that he was not making the bill in order to prove the existence of a civil law suit. Rather his purpose was to delve into the letter signed by the complainant and addressed to the district attorney's office. Any statement as to a civil lawsuit was just a corollary remark designed to convince the complainant that defense counsel was honest and trustworthy. We find this ground of error to be totally without merit. Appellant's third ground of error is overruled.

In a related ground of error, appellant argues that he should have been allowed to question the district attorney in front of the jury regarding the letter and the pending civil suit. Outside the presence of the jury, the district attorney testified that he had received a letter signed by the victim asking that the case be dismissed because she did not want to testify. The district attorney testified that he did not dismiss the case then but he did notify the appellant's attorneys that he would consider the request if he received a letter from the victim in her own handwriting as to her reasons for desiring that the case be dismissed. He further testified that later on he talked with the victim and she told him that she had changed her mind and did not want the case dismissed. When appellant's attorney asked the district attorney if the victim had told him that she had employed an attorney to represent her in a civil case, the district attorney testified that the victim had not told him that.

These contentions have already been answered adversely to appellant in grounds of error two and three. Appellant's thirteenth ground of error is overruled.

The next four grounds of error deal with the voir dire examination of the jury. Before the voir dire examination of the jury began, the trial court, pursuant to an oral motion by the State, ordered appellant not to voir dire the jury on the fact that the victim had signed a letter asking that the case against appellant be dismissed. The appellant objected to this ruling and after the completion of the voir dire examination appellant made a bill of exceptions which outlined the scenario of events with respect to the letter and the victim's wish not to prosecute the case. The bill, however, contained no specific questions which appellant desired to ask of the jury panel. Now, appellant contends that the trial court improperly restricted his voir dire of the jury with respect to the bias and prejudice of the victim, specifically her desire not to prosecute the case.

■ The right to be represented by counsel, guaranteed by the Sixth Amendment and Article 1, Section 10 of the Texas Constitution, encompasses the right of counsel to question the members of the jury panel in order to exercise intelligently his peremptory challenges. *Ratliff v. State*, 690 S.W.2d 597 (Tex.Cr.App.1985); *McManus v. State*, 591 S.W.2d 505 (Tex.Cr.App.1980); *Graham v. State*, 566 S.W.2d 941 (Tex.Cr.App.1978). Hand in hand with this right, however, is the right of the trial court to impose reasonable restrictions on the voir dire examination. *Ratliff v. State*, supra. Before we can determine if the trial court has abused its discretion by improperly restricting the voir dire examination, it is necessary for the record to reflect what questions the defendant desired to ask the jury panel. In the instant case,

appellant's bill contains background material which he desired to present. However, it contains no questions he desired to pose to the panel members. Without such a showing, we cannot hold that the trial court erred in disallowing inquiries into the victim's desire not to have the case prosecuted. Thus we are compelled to find that error, if any, has not been preserved. *McManus v. State*, supra; *Graham v. State*, supra; *Miller v. State*, 666 S.W.2d 564 (Tex.App.—Houston (14th) 1984, no petition). Appellant's ninth and tenth grounds of error are overruled.

In his eleventh ground of error, appellant contends that the trial court erred in overruling his challenge for cause to venireman Bland. During the voir dire examination by the State, venireman Bland informed the court that he was a deputy constable but thought that even though he was involved in law enforcement, he could render a fair verdict. At that point the following occurred:

"MR. BENNETT: How does Mr. ... First, is you name Blano or Bland?

"MR. BLAND: "D".

"MR. BENNETT: How does it appear on the.... May we look at our list to see how Mr. Bland appears? We challenge the juror for cause/Blano and Bland are not assonance.

"COURT: It's correct on the questionnaire, so I'm going to deny that challenge.

"MR. BENNETT: Note my exception, and in connection with the challenge, we will offer the original jury list and not as it's written on the information sheet to the Court.

"COURT: All right."

On appeal, appellant argues that the records show that Mr. Bland who appeared for jury duty was not the same person called for jury duty. Therefore the trial court should have sustained his challenge for cause. The failure of the court to do so required appellant to use one of his peremptory challenges on Mr. Bland. Thus, appellant argues, reversible error occurred.

■ In order to complain of the inclusion of an allegedly disqualified juror, the appellant must show that he was injured or forced to proceed with an objectionable juror. *Williams v. State*, 565 S.W.2d 63 (Tex.Cr.App.1978); *Hernandez v. State*, 563 S.W.2d 947 (Tex.Cr.App.1978).

■ We note initially that we are not able to review appellant's ground of error because the record is not complete. The record does not contain either the original jury list which shows the names of jurors called for jury duty, nor does it include the juror information sheets which were filled out by those who appeared for jury duty. Thus we are unable to say that a Mr. Blano was in fact called for jury service. Furthermore, we are unable to tell from the record whether Bland served as a juror or whether he was struck by either the State or the defense. If he was struck by the defense, there is no indication in the record as to whether appellant exercised all of his peremptory challenges, requested any additional strikes or was forced to accept an objectional juror. In view of the condition of the record, we find that appellant has shown no harm. *Williams v. State*, 682 S.W.2d 538 (Tex.Cr.App.1984); *O'Bryan v. State*, 591 S.W.2d 464 (Tex.Cr.App.1979); *Welcome v. State*, 635 S.W.2d 828 (Tex. App.—Beaumont 1982, petition refused).

■ Furthermore, even if the ground of error had been properly preserved, we would still be compelled to overrule it. At the time of appellant's trial, Article 35.16, V.A.C.C.P., provided in pertinent part:

"(a) A challenge for cause is an objection made to a particular juror, alleging some fact which renders him incapable or unfit to serve on the jury. A challenge for cause may be made by either the state or the defense for any one of the following reasons:

1. That he is not a qualified voter in the state and county under the Constitution and laws of the state; provided, however, the failure to pay a poll tax or register to vote shall not be a disqualification;

2. That he has been convicted of theft or any felony;

3. That he is under indictment or other legal accusation for theft or any felony;

4. That he is insane or has such defect in the organs of feeling or hearing, or such bodily or mental defect or disease as to render him unfit for jury service, or that he is legally blind and either the court or the state in its discretion or the defendant or the prospective juror in his discretion is not satisfied that he is fit for jury service in that particular case;

5. That he is a witness in the case;

6. That he served on the grand jury which found the indictment;

7. That he served on a petit jury in a former trial of the same case;

8. That he has a bias or prejudice in favor of or against the defendant;

9. That from hearsay, or otherwise, there is established in the mind of the juror such a conclusion as to the guilt or innocence of the defendant as would influence him in his action in finding a verdict ...

10. That he cannot read or write.

.      .      .      .      .

(c) A challenge for cause may be made by the defense for any of the following reasons:

1. That he is related within the third degree of consanguinity or affinity to the person injured by the commission of the offense, or to any prosecutor in the case; and

2. That he has a bias or prejudice against any of the law applicable to the case upon which the defense is entitled to rely, either as a defense to some phase of the offense for which the defendant is being prosecuted or as a mitigation thereof or of the punishment therefor."

These grounds for a challenge for cause are exclusive. And as can be seen, the basis for challenge urged by appellant is not included in the list above. Thus the trial court properly overruled appellant's challenge. The eleventh ground of error is overruled.

In his sixth ground of error, appellant argues that the trial court impermissibly restricted his voir dire examination of venireman Newman. During voir dire examination by appellant, Newman testified that he lived next door to the Brazos County District Attorney. Thereafter the following occurred:

"MR. BENNETT: And if it's developed on the trial of this case that the case is being tried by the Assistant District Attorney at the insistence of Mr. Bryan ... insistence of Mr. Bryan, would that be likely or liable to influence you or bias or prejudice you one way or the other in arriving at your verdict as an individual juror?

"MR. NEWMAN: I would hope not, Mr. Bennett. I'm also a neighbor of Mr. Lawrence [one of the defense attorneys] and have known him so—

"MR. BENNETT: And Mr. Bryan has been subpoenaed as a witness. You live close to Mr. Lawrence, you live close to ... next-door neighbor to Mr. Bryan, the District Attorney?

"MR. NEWMAN: Yes, sir.

"MR. BENNETT: And Mr. Bryan may be called to testify. You and Mr. Bryan are friends?

"MR. NEWMAN: Yes, sir, we are.

"MR. BENNETT: And I assume that you actively participated in his campaign for District Attorney?

"MR. NEWMAN: Yes, sir, that's correct.

"MR. BENNETT: And could you lay aside your friendship with Mr. Bryan and arrive ... and test his credibility as a witness with the test that the Court gives you, or would you be inclined, by reason of your friendship, acquaintance, and knowledge of Mr. Bryan, to attach more credence to his testimony than he might give?

"MR. NEWMAN: Yes, sir, I think I would initially.

"MR. BENNETT: You think you would?

"MR. NEWMAN: Yes, sir, I would attach credence to his testimony at least initially by reason of the friendship.

"MR. BENNETT: Through knowing him as a neighbor and as a friend?

"MR. NEWMAN: Yes, sir, as a friend.

"MR. BENNETT: Even if the Court told you to do otherwise, do you feel that you might could wipe that out of your mind—

"MR. NEWMAN: I believe in that circumstance, I could.

"MR. BENNETT: In the event Mr. Bryan should testify as a witness in this case, could you be a fair juror?

"MR. NEWMAN: Yes, sir, I would feel that I could." [material in brackets added]

On appeal, appellant argues that the court erred in not allowing him to question Newman about his impartiality in view of the fact that the complainant had requested in writing that the case be dismissed. At trial appellant perfected a bill of exceptions in which he offered that he would like to question Newman on the fact that the complainant had written a letter asking that the case be dismissed but the district attorney refused to honor that request.

In *Ratliff v. State,* supra, we noted that the right of counsel to question the members of the jury panel in order to exercise intelligently his peremptory challenges must be harmonized and balanced with the right of the trial court to control the voir dire. Implicit in this scheme is the right of the trial court to impose *reasonable* restrictions on a party's voir dire examination.

We find no abuse of discretion in the instant case. Appellant was freely allowed to question Newman about his relationship with the district attorney and how it would affect his impartiality as a juror— including the fact that the case was being tried at the insistence of the district attorney. The only restriction placed upon appellant was that he could not inquire as to the effect of the letter written by the complainant. Since we held in ground of error number two that the letter was not admissible we now find that the trial court did

not abuse its discretion in limiting appellant's voir dire as to the letter. Appellant's sixth ground of error is overruled.

In his seventh ground of error, appellant argues that the trial court improperly limited his right of cross-examination. During the punishment phase of the trial, the State called Polly Menard as a witness. After asking the witness if she knew appellant, the prosecutor asked about appellant's general reputation for being a peaceful and law-abiding citizen. Menard testified that appellant had a bad reputation and the prosecutor passed her to defense counsel for questioning. Thereafter defense counsel opened his cross-examination of Menard by asking her how long she had known appellant. The prosecutor objected and the trial court sustained the objection. Defense counsel then informed the court that he had no further questions of Menard and she was excused.

Appellant did not perfect a bill of exception or proffer proof to show what testimony he desired to elicit. When a defendant contends that his cross-examination of a witness has been unduly limited, nothing is preserved for review unless the record shows by bill of exception or otherwise what questions he wanted to propound and the answers he expected therefrom. Nothing has been preserved for review. *Passmore v. State,* 617 S.W.2d 682 (Tex.Cr.App.1981); *Barnett v. State,* 615 S.W.2d 220 (Tex.Cr.App.1981).

In another ground of error, appellant contends again that his right of cross-examination was improperly limited during the testimony of Officer Janie Bloomer. On direct, Officer Bloomer testified that she responded to the call that a shooting victim had been admitted to the hospital. When she arrived at the hospital she found appellant and the complainant in one of the treatment areas in the emergency room. On cross-examination, defense counsel asked Bloomer whether she thought that if appellant had wanted to kill the complainant, he could have killed her with his bare hands. The prosecution's objection was

sustained. Out of the presence of the jury, appellant perfected a bill of exceptions:

"Q. Going back to my former question, Officer Bloomer, if I may, I believe the question was something like this; I'll reiterate it. Officer Bloomer, based on your training for a police officer and your study as a police officer and your experience as a police officer and your sight of Bill Easterling and Charlotte Easterling on the evening of the 14th of September, 1978, at the St. Joseph's Hospital, it is your opinion, is it not, that Bill Easterling could have killed Charlotte Easterling with his bear (sic) hands if he had so desired?

"A. He could have done her severe physical damage.

"Q. With his bear (sic) hands, if he had so desired?

"A. He could have attempted. I don't know what skills she had. Wouldn't be exactly sure on her size and measurements either, because she was laying on the examination table.

"Q. And you learned that Bill Easterling had brought her there?

"A. Yes, sir, I had."

Appellant now contends that such testimony would have been helpful to the jury in determining appellant's true intent at the time of the shooting. He argues that such evidence would have aided the jury in understanding that if appellant had really wanted to kill the victim, he would have strangled her after seeing that the gunshot wound to her head had not killed her.

██ It has long been held that the scope of cross-examination is within the control of the trial judge in the exercise of his sound discretion. *Toler v. State,* 546 S.W.2d 290 (Tex.Cr.App.1977). In the instant case we find that the trial court did not abuse his discretion. Although the record showed that appellant and the victim were often physically abusive to one another, there is no testimony in the record regarding an attempt on this occasion by appellant to strangle the victim. Thus such cross-examination by appellant called for pure speculation and was totally outside the facts of this offense. *Cosby v. State,* 220 S.W.2d 471 (Tex.Cr.App.1949). Furthermore, even if this testimony were relevant to the issue of intent and should have been admitted into evidence, the members of the jury had the opportunity to view both appellant and the victim and make their own judgment as to appellant's physical abilities. See *Steve v. State,* 614 S.W.2d 137 (Tex.Cr.App.1981). Appellant's twelfth ground of error is overruled.

In two grounds of error, appellant complains of error which occurred during the punishment phase of the trial after he called the Brazos County District Attorney as a witness. In his fifth ground of error, appellant contends that the trial court erred in allowing the Brazos County District Attorney to testify that he was not there to recommend probation for appellant. Appellant's case was prosecuted by two assistant district attorneys. Appellant called the Brazos County District Attorney to the stand and proceeded to question him generally regarding the provisions of Article 42.12, V.A.C.C.P., as they relate to the procedure for revoking probation. Defense counsel concluded his direct examination by asking the witness if since he had taken office, numerous motions to revoke probation had been filed. The witness responded affirmatively.

On cross-examination, the prosecutor immediately asked his superior if he was there to recommend probation for appellant. Defense counsel's objection that the question invaded the province of the jury was overruled, and the witness was allowed to answer that he was not there to recommend probation for appellant.

Appellant now argues, without citation to authority, that the effect of the testimony was that the district attorney was recommending against the granting of probation for appellant. Since the district attorney was not prosecuting the case, appellant argues that this "opinion" was not based

upon evidence adduced at trial, but from his own personal opinion. Appellant analogizes this testimony to the type of jury argument in which the prosecutor argues that from what he knows about the accused, the jury should either find him guilty or assess a heavy penalty.

We note initially that appellant's objection at trial does not comport with the argument he is now making on appeal. Thus, error, if any, has not been preserved. *Hodge v. State,* 631 S.W.2d 754 (Tex.Cr. App.1982); *Nelson v. State,* 607 S.W.2d 554 (Tex.Cr.App.1980).

Furthermore, we do not believe that it is a necessary inference from the answer of the district attorney that he was recommending *against* the granting of probation. It can be equally inferred that he was testifying that he was not making any kind of recommendation—either for or against —probation.

■ Even if the jury construed the district attorney's answer as a recommendation against the granting of probation, there is nothing in the record that persuades us that the jury would have inferred from such testimony that the testimony was not based upon the evidence. Finally, we find that such testimony was harmless in light of the fact that during the voir dire examination of the jury, the prosecutor had informed the jury that the State would oppose probation in this case. This ground of error is overruled.

In his eighth ground of error, appellant argues that the district attorney engaged in prosecutorial misconduct during his testimony before the jury. When the district attorney was questioned by appellant's counsel concerning the contents of a computer print out of appellant's criminal record, the following occurred:

"Q. I hand you the printout, and that does not reflect any convictions, does it?

"MR. TORREY: I will object—

"A. No, sir.

"COURT: Do you want me to rule on it still?

"A. Well, I'd like to qualify my answer though, Judge.

"COURT: Do so.

"A. Mr. Easterling, as far as I know, has not been convicted of any serious misdemeanor offense or any felony offense. However, he has—and I have known it for quite some time—has a very hot temper, he has been a fighter, disturber of the peace—

"MR. BENNETT: Just a minute—

"A. —and has been prone to—

"MR. BENNETT: —allege specific acts of misconduct.

"COURT: Ladies and gentlemen of the jury, disregard any acts of specific misconduct that Mr. Bryan has testified to.

"MR. BENNETT: That's all."

Appellant argues that the inflammatory nature of the witness's testimony was such that the instruction to disregard was insufficient to cure the error.

■ Appellant's objection was sustained, and an instruction to disregard was given by the court. No further relief was requested. Appellant having received all the relief requested, nothing is presented for review. *Reese v. State,* 531 S.W.2d 638 (Tex.Cr.App.1976); *Hunter v. State,* 530 S.W.2d 573 (Tex.Cr.App.1975).

■ In his fourteenth ground of error appellant complains that the court failed properly to instruct the jury as to the proper use of "have you heard questions." During the guilt-innocence phase of the trial, the State asked several of the appellant's reputation witnesses "have you heard questions" as to prior misconduct of appellant. At one point after the State had finished its cross-examination of one of these witnesses, appellant asked that the trial court instruct the jury that the "have you heard" questions were not admitted for the truth or falsity of the allegations contained therein but simply to test the knowledge of the witness. The trial court at that time denied appellant's request. However, a review of the court's charge on

guilt-innocence shows that the court did indeed include such an instruction:

"You are instructed that if there is evidence before you to the effect that certain character witnesses for the defendant had heard about other offenses on the part of the defendant, if any, then such evidence may only be considered by you, if you consider it at all, for the purpose of testing (if it does) the knowledge of such witnesses as to the defendant's reputation and the weight to be given to their testimony; and you must not consider such evidence for any other purpose."

We find appellant's complaint to be without merit. His fourteenth ground of error is overruled.

In his fourth ground of error, appellant contends that the trial court erred in making an affirmative finding that the appellant used a deadly weapon during the commission of the offense. It is undisputed that the trial judge included the following in appellant's judgment:

"The court further makes the affirmative finding that the defendant used a deadly weapon (pistol) in the commission of the aforesaid offense."

Since appellant was tried by a jury the court had no authority to make an affirmative finding that appellant used a deadly weapon. Art. 42.12, Sec. 3f(a)(2) V.A.C. C.P.; *Ex parte Thomas*, 638 S.W.2d 905 (Tex.Cr.App.1982). Thus we must determine whether the jury made an affirmative finding as to a deadly weapon. In the recent case of *Polk v. State*, 693 S.W.2d 391 (Tex.Cr.App.1985), this Court held the following:

"Where the jury is the trier of fact, the trial court may not properly enter that they have made an affirmative finding concerning the defendant's use or exhibition of a deadly weapon or firearm during the commission of the offense unless:

1) the deadly weapon or firearm has been *specifically* pled *as such* (using the nomenclature 'deadly weapon') in the indictment (Applies where the verdict reads 'guilty as charged in the indictment.' [citation omitted]);

2) where not specifically pled in '1)' above as a deadly weapon or firearm, the weapon pled is per se a deadly weapon or a firearm; or,

3) a special issue is submitted and answered affirmatively. [footnote omitted]" 693 S.W.2d at 396.

Applying the above, we find that neither of the three instances is present in the instant case. The indictment alleged that appellant:

"did then and there unlawfully intentionally and knowingly attempt to cause the death of an individual, CHARLOTTE EASTERLING, by shooting her with a gun, ..."

As can be seen the indictment did not include the language "deadly weapon". Nor did the indictment allege the use of a deadly weapon per se because it has long been established that a gun is not a deadly weapon per se. *Boyett v. State*, 692 S.W.2d 512 (Tex.Cr.App.1985). Thus neither of the first two instances have been satisfied.

In the abstract portion of the court's charge on guilt-innocence, the jury was instructed that:

"A 'deadly weapon' means a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury, or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury."

The application paragraph of the charge under which appellant was convicted read:

"If you find from the evidence beyond a reasonable doubt that on or about the 14th day of September, 1978, in Brazos County, Texas, the defendant, William Truitt Easterling, did, with the intent to kill the said Charlotte Easterling, intentionally attempt to kill the said Charlotte Easterling by shooting her with a firearm, to wit, a gun, but you further find

and believe from all the facts and circumstances in evidence in this case, the defendant, in attempting to kill the said Charlotte Easterling, if he did, acted under the immediate influence of sudden passion arising from an adequate cause, then you will find the defendant guilty of an attempt to commit voluntary manslaughter."

The verdict returned by the jury read:
"We, the jury, find the defendant, William Truitt Easterling guilty beyond a reasonable doubt of the offense of attempted voluntary manslaughter."

No special issue concerning a deadly weapon was submitted to the jury during the punishment phase of the case. Thus we find that the affirmative finding was therefore improperly entered on the judgment.

The State cites *Ex parte Moser*, 602 S.W.2d 530 (Tex.Cr.App.1980) as authority for the position that the trial court properly made the affirmative finding of a deadly weapon. A close reading of *Moser* shows it to be distinguishable from the instant case and actually in accord with *Polk*. In *Moser*, the trial court entered an affirmative finding of a deadly weapon after a jury trial. However, the indictment in *Moser* alleged the use of a pistol, a deadly weapon per se. In addition, the jury's verdict contained the language that they found the defendant "guilty of murder, as charged in the indictment."

Because we find the trial judge was without authority to make the affirmative finding of a deadly weapon, we order the affirmative finding stricken from the judgment and reform the judgment by deleting the improper finding. The remainder of the judgment is affirmed.

ONION, P.J., and CLINTON, J., concur in result.

TEAGUE, J., dissents.

W.C. DAVIS, J., not participating.