Artie Roy **MAYHAM**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. C14–89–1032–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 9, 1990.

Frank M. Sheppard, Jr., Houston, for appellant.

Linda A. West, Houston, for appellee.

Before PAUL PRESSLER, CANNON and ELLIS, JJ.

## OPINION

ELLIS, Justice.

Appellant, Artie Roy Mayham, appeals his judgment of conviction for the offense of possession of a controlled substance with intent to deliver, namely, cocaine, weighing less than twenty-eight grams. TEX.HEALTH & SAFETY CODE ANN. § 481.112(a), (b) (Vernon 1990). The jury rejected appellant's not guilty plea and found him guilty as alleged in the indictment. The court, after finding the enhancement paragraph of the indictment to be true, assessed appellant's punishment at sixteen years confinement in the Institutional Division of the Texas Department of Criminal Justice. We affirm.

In his first point of error, appellant asserts that the trial court erred in denying his challenge for cause of prospective juror Jeffrey Eugene Jackson.

The record reflects the following during the State's voir dire:

[PROSECUTOR]: ... Is there anyone who has some experience with a police officer, be it good or bad that might affect their life in any way? I want you to think about that. Maybe you got a ticket you didn't deserve. Maybe your son was accused of something or your neighbor was accused of something and you heard something about that that swayed you in any way? Anyone on the first row?

\* \* \* \* \* \*

[PROSECUTOR]: Okay. Anyone on the second row, Mr. Jackson?

MR. JACKSON: We're with them all the time.

[PROSECUTOR]: But you work with them day-in and day-out?

MR. JACKSON: Every day I work.

[PROSECUTOR]: Okay. Now, are you saying that—how would that affect you in this trial?

MR. JACKSON: I would have to base it on the evidence that I would tend to lean towards their credibility [sic].

[PROSECUTOR]: Okay. Because you work with them?

But let me ask you this, you wouldn't automatically convict this Defendant just because police officers testify against him?

MR. JACKSON: No, not just automatically.

[PROSECUTOR]: But could you—I mean you're not saying that you already start out this trial with a decision: I mean, if you know police officers, you know their training, you know professional people who are trained to observe, that's fine. You can take all this training into consideration, but I guess what I'm asking you is, you don't have a bias that would not give this Defendant a fair trial; could you say you would be fair to them [sic], couldn't you?

MR. JACKSON: I would say more than likely I can. I'm not for sure on that.

[PROSECUTOR]: Okay.

MR. JACKSON: But I can honestly say that.

At the conclusion of the voir dire for both sides, some members of the venire were individually called to the bench. Among them was Mr. Jackson who was questioned as follows:

THE COURT: Mr. Jackson, you're still with the fire department:

MR. JACKSON: Yes, sir.

THE COURT: There was some question put to you about you may have some

bias, a personal bias in favor of police officers' testimony. Of course, there may be some police officers testifying in this case, probably will be and other witnesses.

So you feel that you can set aside that bias and base a verdict only on what you hear in the trial and give the same test of credibility to all of the witnesses?

MR. JACKSON: I believe that it probably wouldn't affect me. You know, I deal with this problem every day and I'm not really sure how it—almost have to say taht I would, especially with the delivery of a controlled substance, my personal beliefs, I would lean more towards the State in a situation like that. My own personal feelings. I would think that I would be able to be fair and put it aside for the purposes of being on the jury, but I would like to believe that I could do that.

THE COURT: Based on what you hear and the evidence, you would give the same test of credibility to both sides?

MR. JACKSON: I would like to think that I believe that, you know.

THE COURT: You will be having to take an oath.

MR. JACKSON: I understand that, so I would be able to, under oath, I'd say that I would base it solely on the facts. I should be able to come to a decision.

THE COURT: You want to ask any question, Mr. Sheppard: (Defense Counsel)

[DEFENSE COUNSEL]: Mr. Jackson, you understand that the question is whether you can be fair and impartial to the defendant or to the State?

MR. JACKSON: Uh-huh.

[DEFENSE COUNSEL]: And that you don't have any preconceived notions that this person is guilty because he was arrested by a police officer, and police officers are testifying; you think he's guilty because of that?

MR. JACKSON: I'm not trying to get out of doing this.

[DEFENSE COUNSEL]: I understand.

MR. JACKSON: But I do believe that's more the way I feel. I work with these guys every day and like I said, I've been sitting here wrestling with it ever since I got here, even this morning.

[DEFENSE COUNSEL]: You feel if a police officer testified that he's guilty and other people testified that he was not, you'd give more weight to the police officer's testimony and believe them over the other witnesses?

MR. JACKSON: If one police officer stood up and said—and four other witnesses said to the contrary, based solely on that, you would have to go with the majority of the people. You know, but I understand that along with my profession that a police officer is a professional witness, so I would have to believe what he said whether I believed the other witnesses, that would be a different story.

[DEFENSE COUNSEL]: I renew our challenge.

THE COURT: Mr. Jackson.

MR. JACKSON: Yes, sir.

THE COURT: You understand without impeaching any police officers they can be mistaken. I guess a fireman can be, too.

MR. JACKSON: Yes, sir.

THE COURT: Would you be tending to believe a police officer's testimony that [sic] others?

MR. JACKSON: No, I thought that's what I said a minute ago. I didn't put it out right.

THE COURT: You're saying then that whatever bias you have, can be set aside and listen to the facts and decide the facts and all the evidence?

MR. JACKSON: I would think so.

THE COURT: Do you have any hesitation about taking the oath?

MR. JACKSON: Other than what we've already discussed, I don't believe so. If I'm picked for it, then obviously, I'll set it aside, you know, that I've been working with these guys and dealing with them, you know, every day.

THE COURT: If you're selected on this jury, you won't carry your experiences into any discussions into the jury room?

MR. JACKSON: Oh, not at all.

THE COURT: And you'd only discuss the evidence?

MR. JACKSON: Oh, yes, sir.

THE COURT: Thank you, Mr. Jackson.

[PROSECUTOR]: Thank you, sir.

THE COURT: I deny your challenge.

■ This point of error is not properly before this Court for review because it was not preserved in the court below. The law is well established that to preserve reversible error in regard to the denial of a defendant's challenge to a prospective juror for cause, the defendant must show: 1) that he was forced to exercise a peremptory challenge to excuse the prospective juror to whom the challenge for cause should have been sustained. (2) that he exhausted all his peremptory challenges. (3) and that he was forced to accept a juror whom he found objectionable. *Felder v. State*, 758 S.W.2d 760, 766–67 (Tex.Crim.App.1988); *Easterling v. State*, 710 S.W.2d 569, 576 (Tex.Crim.App.1986), cert. denied 479 U.S. 848, 107 S.Ct. 170, 93 L.Ed.2d 108 (1986); *Williams v. State*, 565 S.W.2d 63, 65 (Tex. Crim.App.1978).

The defendant's jury list reflects that defense counsel exercised a peremptory strike against Mr. Jackson. The record further reflects that defense counsel used all ten of his peremptory challenges. However, the record does not reflect that appellant's counsel was forced to accept a juror whom he found objectionable. In fact, immediately after the clerk called the names of twelve jurors, the following occurred:

THE COURT: The first called 12 names are on the jury, counsel. Any objection to those 12 names to the prosecutor?

[PROSECUTOR]: None from the State.

THE COURT: Anything from the defense?

[DEFENSE COUNSEL]: None, Your Honor,

There is therefore no indication whatsoever that appellant was harmed by the trial court's denial of his challenge for cause.

Further Appellant's argument was recently addressed by the Court of Criminal Appeals. In *Harris v. State*, 784 S.W.2d 5, 21 (Tex.Crim.App.1989), cert. denied —

U.S. ——, 110 S.Ct. 1837, 108 L.Ed.2d 966 (1990), a venireperson was challenged by the defense because he admitted that he would give more weight to police officers' testimony than to the testimony of others. However, the Court held that since the veniremember clearly indicated that he could take the oath to serve as a juror, follow the law, and not prejudge any witness' testimony, there was no abuse of discretion under TEX.CODE CRIM.PROC.ANN. art. 35.16 (Vernon 1989) in denying the challenge for cause.

Mr. Jackson had no hesitation about taking the oath; he said that he could set his bias aside and decide the case based on the evidence; and also stated that he would not tend to believe a police officer over other witnesses. We find that the trial court did not abuse his discretion in denying appellant's challenge fo cause. Appellant's first point of error is overruled.

■ In his second point of error appellant submits that the trial court erred in admitting evidence obtained by a search that was invalid because it was made without probable cause. Appellant filed a motion to suppress on August 28, 1989, alleging that he was "illegally detained and [that] his person was searched without probable cause or legal process." This motion was overruled during the trial after the State rested its case when counsel for the defense asked if the court has "made a decision on that." Appellant complains in his brief that he requested a pretrial hearing on this motion which the court would not allow. However, although the written motion states that a pretrial hearing is necessary, the record is devoid of any indication that the trial judge refused to give the appellant a hearing.

When the State offered the cocaine into evidence, defense counsel objected as follows:

Your Honor, we're going to object. Our motion to suppress that we filed prior to the trial and no probable cause for arrest of the Defendant at this time. We object to the introduction.

The record reflects that there was no search conducted.

Houston Police Officers Gerald Bullin and Dennis Garrett were riding together patrolling the streets of the Third Ward in Houston, Harris County, Texas, on the evening of March 10, 1989. They rode the 3:00 p.m. to 11:00 p.m. shift. Driving east on Anita Street at about 10:30 p.m. the officers observed a group of men huddled together on a small parking lot in front of a convenience store.

As the officers drove closer to the store, the men looked up, saw the patrol car and immediately dispersed in all directions, looking nervous. Appellant went east, casually dropping a plastic bag from his right hand. This act was observed by both officers. Officer Bullin immediately got out of the patrol car and retrieved the bag from the ground. He found that it was a sandwich bag with eleven smaller baggies inside it, each of which contained what appeared to be a rock of crack cocaine. Officer Bullin told appellant to stop because he was under arrest. At that point, appellant began to run. By that time, Officer Garrett was also out of the patrol car and assisted his partner in chasing appellant. The eleven rocks were determined by a chemist to be 4.5 grams approximately ninety-two percent (92%) pure cocaine.

The record is clear that there was not a search in this case, only a seizure of abandoned property; and that appellant was not detained in any way until after the officers had retrieved the contraband. *Hawkins v. State*, 758 S.W.2d 255 (Tex.Crim.App.1988).

This case is similar to our court's opinion in *Hall v. State*, 783 S.W.2d 14 (Tex.App.–Houston [14th Dist.] 1989, pet.ref'd), in which we stated:

> This case is clearly distinguishable from the cases which have required suppression of evidence that was abandoned after an unwarranted investigative stop. Here, appellant abandoned the property when he saw the officer drive into the parking lot.

■ In the instant case, the officers had not even driven into the parking lot; they were still in the street. A person who drops contraband onto the ground at the very sight of a police car coming down the street should not be heard to complain that his rights were violated by his subsequent arrest.

Appellant does not argue that he involuntarily abandoned the cocaine, but points out that he "produced five eyewitnesses who testified that they did not see him drop anything on the ground prior to the police arresting him." The jury, as the factfinder, was free to accept or reject any or all of the testimony of any witness for either the State or the accused. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App.1986), cert. denied 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988); *Penegraph v. State*, 623 S.W.2d 341 (Tex.Crim.App.1981). Appellant's second point of error is overruled.

Accordingly the judgment of the trial court is affirmed.

PAUL PRESSLER, J., not participating.