**AFFIRM; and Opinion Filed October 22, 2018.**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

_____

No. 05-17-00735-CR
_____

**FRANCISCO J. TRUJILLO-CAMACHO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 4**
**Collin County, Texas**
**Trial Court Cause No. 004-84704-2016**

## MEMORANDUM OPINION

Before Justices Bridges, Francis, and Lang-Miers
Opinion by Justice Lang-Miers

Appellant Francisco J. Trujillo-Camacho was convicted by a jury of misdemeanor assault.

Appellant was subsequently sentenced, in accordance with a plea bargain agreement, to 150 days

in jail, probated for 12 months.[1] Appellant claims on appeal that the trial court improperly limited

his cross-examination of the complainant. We affirm.

## Background

On April 14, 2016, Carlos Chavarria and appellant were both playing on opposing teams

in an adult soccer game at Blue Sky Sports Center in Allen, Texas. Chavarria was playing forward

---

[1] As a condition of his plea bargain, appellant waived his right to appeal his punishment. Appellant has limited his appeal to alleged error at the guilt-innocence phase of the trial.

and appellant was defending against him; both were going towards the goal when they got into an altercation on the field. What exactly led to the altercation was in dispute: Chavarria claimed that appellant was "getting in his face" as he was trying to talk to the referee by shoving him and trying to fight him while appellant testified that Chavarria was playing overly aggressively, hitting him repeatedly in a leg that had been previously injured, and shoving him when appellant told Chavarria "you don't have to play like that." Both men got "yellow cards" from the referee and were sent to their respective penalty boxes.

Chavarria testified that, on the way to the penalty boxes, appellant said, "Let's take this outside." Although Chavarria initially agreed and began following appellant out of the facility, he changed his mind. He testified that he told appellant, "I'm not stupid, I haven't done anything to you, I don't want to fight you." Chavarria turned around and began walking back onto the field. Sensing appellant "coming at me," Chavarria turned around. Appellant lunged at him, "head-butting" him with his forehead between Chavarria's nose and his lip. One of Chavarria's teeth fell out. A teammate of Chavarria's who was either a dentist or a dental assistant put the tooth back in its socket in the hopes of preventing the tooth from dying. Another tooth was chipped and broken. His face bled for about thirty minutes, he felt pain for about twelve hours, and he had to have stitches in his lip. His injuries necessitated a lot of expensive dental work.

Conner McCoy, the game's scorekeeper, corroborated Chavarria's account of the assault. McCoy did not see appellant and Chavarria fighting, but he did see them both receive yellow cards for a "field argument, probably a little bit of shoving." McCoy watched the two argue on the way to their penalty boxes; he believed they agreed to go outside and fight. When Chavarria reached the exit, he backed up and walked away from appellant toward his penalty box. Appellant then quickly walked up to Chavarria, grabbed him by the shoulders, and "head-butted" him, striking Chavarria in the teeth with his forehead.

The referee who yellow-carded appellant and Chavarria, Steve McClure, recalled the altercation on the field: "Because there was a foul of somebody . . . it seemed to make them both very mad. And they started to kind of pushing and shoving, so we blew our whistles and then issued yellow cards for those guys to cool off in the penalty box." Appellant and Chavarria were talking as they exited the field; while McClure could not hear what they were saying, it looked to him like they might be going outside, presumptively to fight. At some point both turned around and started walking towards each other. Both men had their hands at their sides and it did not look to McClure like either was going to throw a punch. McClure saw appellant "head-butt" Chavarria. Appellant was tackled by Chavarria's teammates and a "tussle" ensued. The referee called the game. A "red card" was ultimately issued to appellant which resulted in his suspension for one year from Blue Sky.

Appellant provided a different account of these events in an effort to show that Chavarria's injuries were accidentally inflicted. Appellant testified that Chavarria was an overly aggressive player who, during the game, had knocked some of appellant's teammates down, repeatedly kicked appellant in his previously injured leg, and laughed when appellant told him to stop. Appellant testified that Chavarria instigated the altercation. While they were walking off the field towards the penalty boxes, Chavarria was following him closely and calling him names. Appellant thought that Chavarria was trying to provoke him and "get me angry because he was in front of his teammates." When appellant finally turned around, Chavarria also turned around and started walking away, but then turned again to face appellant. As appellant testified: "His hands went up . . . I thought he was going to punch me, and I didn't want to get punched." Appellant, who testified that he really believed that he was threatened by Chavarria and that Chavarria was going to hit him, intended to pick Chavarria up and then put him down. As they came at each other, appellant's

head accidentally hit Chavarria's teeth. Appellant denied that he intended to strike Chavarria, stating he only planned to grab and tackle him in self-defense.

Appellant presented the testimony of three of his teammates – Omar Munoz, Lenny Alvarez, and Bobby Desi – who had witnessed the altercation and supported appellant's version of events.

Munoz had played soccer against Chavarria a number of times. He described Chavarria as a player who "talks a lot of . . . smack," likes to initiate conflict, and provokes players on the opposing team. Munoz, who witnessed the fight from the team bench, saw appellant and Chavarria exchanging words and "making human contact" but not shoving. He heard appellant tell Chavarria to "go back to your bench" and saw appellant wave him off. Munoz stated that Chavarria did not relent and "bumped" appellant all the way to his team bench and then pushed appellant "through the gut." Appellant threw his arms out like he was trying to tackle Chavarria. Munoz did not believe that appellant intentionally "head-butted" Chavarria and thought the altercation was Chavarria's fault.

Alvarez, who watched the game from the bleachers, testified that he had played against Chavarria before and described him as a good but physical player who does not like to lose and who can become aggressive. Alvarez testified that during the game Chavarria got frustrated and became more physical and aggressive when appellant took the ball from him. He testified that he saw Chavarria repeatedly kick appellant in the legs during the game. Eventually, the referee gave both appellant and Chavarria yellow-cards. Chavarria followed appellant "really close" to his bench. Alvarez testified that he saw Chavarria "puff up" and go towards appellant; he thought Chavarria was going to punch appellant. Both men lunged at each other and their heads collided. Alvarez thought neither of them intended to "head-butt" the other and that Chavarria, not appellant, provoked the confrontation.

Desi had played soccer against Chavarria and described him as a fast, physical, overly aggressive player. He testified that Chavarria "mouths off to players" when he gets frustrated. Desi was playing goalie on April 14, 2016, and had the entire field in his view. Desi testified that Chavarria got more aggressive as the game progressed and he saw Chavarria "mouthing off" to appellant. In Desi's opinion, appellant was just trying to defend and was not hot-tempered; Desi did not see him be aggressive against Chavarria. Desi saw Chavarria follow appellant almost "into the bench" to "go towards the boxes." He noticed a commotion, but did not see the "head-butt" and could not say who initiated the physical contact.

Someone called the police, who arrived about twenty minutes later. Chavarria gave a statement to the police. Responding Allen police officer Davis Upvall testified as to this statement:

> He said during a soccer match he and a subject from another team got into a pushing match on the way back to their benches after receiving yellow cards. And the subject from the other team called him some names, when he turned around and looked at him, he was immediately head-butted.

Upvall noticed that Chavarria was bleeding and had injuries to his teeth: "[h]is two upper middle front teeth were pushed, I believe . . . they were loose. And then the . . . center tooth was broken in half." Upvall spoke to McCoy and the goalie for Chavarria's team who confirmed Chavarria's story. He also spoke to a third person, who told Upvall he was from appellant's team but whose identity Upvall did not verify; this unnamed person corroborated Chavarria's story.

Because appellant had already left the facility, Upvall got appellant's address from the facility and went to appellant's residence to talk to him. Upvall noticed that appellant had two Band-Aids on his forehead. Upvall testified that, in explaining what happened, appellant said that his team was "down" and that Chavarria was "playing dirty." Appellant told the officer that Chavarria made the first physical contact by punching appellant; the officer believed appellant said he got back up and pushed Chavarria back. They were both issued yellow cards and proceeded to

the penalty box. Appellant told the officer that "on the way there . . . [Chavarria] . . . came after him first, and that he ducked in, it was the term that he used." When Upvall asked appellant what "ducking in" was, appellant would not elaborate. Upvall testified that he thought Chavarria's story made more sense because it "was corroborated by a person there at the time, and two other witnesses, one being the score keeper, which I would think, you know, is impartial from the two parties."

Appellant was subsequently arrested and charged with assault. The case was tried to a jury which found appellant guilty. Appellant filed a motion for new trial, which the trial court denied. This appeal followed.

### Appellant's Allegations and State's Response

Appellant claims that the trial court erred by prohibiting him from cross-examining Chavarria, the complaining witness, about his personal injury claim against appellant. The State responds that appellant failed to preserve this complaint for appellate review because he did not object to the limitation on his questioning of Chavarria, and, further, did not make an offer of proof or a bill of exceptions as to the expected content of the excluded testimony. The State further argues that appellant fails to demonstrate that the trial court abused its discretion by limiting his cross-examination of Chavarria and, even if it did, any error in the trial court's ruling is harmless.

### Cross-Examination and Other Questioning

During appellant's cross-examination of Chavarria, the following exchange took place:

Q. (BY DEFENSE COUNSEL) Did you go to the hospital?

A. The following morning I went to the dentist.

Q. Okay. And – well, did your insurance take care of that?

A. Don't have dental insurance.

Q. Oh, you don't have insurance?

A. No, sir.

Q. Okay. Well, who paid for your doctor bill?

A. I've been paying for it myself.

Q. Oh, you have?

A. Yes, sir.

*

Q. Okay. And you now – have you made a personal injury claim against –

(BY THE PROSECUTOR): Objection, Your Honor.

May we approach?

THE COURT: Both sides approach.

(At the bench, outside the hearing of the court reporter.)

THE COURT: Sustained.

A record was not made of what was discussed outside the hearing of the court reporter, nor did appellant object to the trial court's action in sustaining the State's objection.

During the course of the State's re-direct examination of Chavarria, the following exchange took place:

Q. (BY THE PROSECUTOR) Carlos, you and I have talked a lot about taking care of all these bills that you're dealing with, right?

A. Correct.

Q. Has that been difficult for you?

A. Yes, ma'am.

Q. And we at the DA's office have been trying to kind of figure it all out, is that right?

A. Yes, ma'am.

Q. How much money are you out on all this?

A. So far, I'm sure I've paid about $3,000, a little more.

Appellant did not seek to question Chavarria further about his dental bills or how he planned to try and pay them.

## Confrontation and Preservation

The State argues that appellant has failed to preserve error because he did not make a sufficient record showing why he should have been allowed to question Chavarria on any civil lawsuit he may have filed against appellant. We agree.

The record reflects only that, following an off-the-record discussion, the trial court sustained the State's general objection to appellant's attempted line of questioning "have you made a personal injury claim against" appellant. The record does not reflect that appellant objected to the trial court's limitation on his questioning of Chavarria. Nor does the record reflect that appellant made a bill of exceptions or offer of proof regarding his attempted line of questioning.

The Sixth Amendment to the United States Constitution guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." U.S. CONST. amend. VI. This guarantee is applicable to the states by the Due Process Clause of the Fourteenth Amendment. U.S. CONST. amend. XIV; *Pointer v. State,* 380 U.S. 400, 403 (1965); *see also* TEX. CONST. art. I, § 10. The right of confrontation includes the right of cross-examination. *Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996).

A witness may be cross-examined on any relevant matter, including credibility. TEX. R. EVID. 611(b). The scope of appropriate cross-examination is necessarily broad. *Carroll,* 916 S.W.2d at 497; *see also Smith v. State,* 352 S.W.3d 55, 64 (Tex. App.—Fort Worth 2011, no pet.). A party has the right to pursue all avenues of cross-examination reasonably calculated to expose bias, motive, or interest for the witness to testify. *Carroll,* 916 S.W.2d at 497. The fact that a witness is a party to a related civil action against the defendant is generally admissible as tending

–8–

to show the pecuniary interest and bias of the witness. *Cox v. State*, 523 S. W.2d 695, 700 (Tex. Crim. App. 1975). The relevance of such evidence is its impeachment value to show motive to give false testimony based on a witness' desire to recover damages or other relief. *Nguyen v. State*, 506 S.W.3d 69, 86 (Tex. App.—Texarkana 2016, pet. ref'd).

Preservation requirements apply to confrontation complaints. *See Reyna v. State*, 168 S.W.3d 173, 179–80 (Tex. Crim. App. 2005) (overruling the defendant's confrontation issues because he did not preserve error related to the confrontation clause at trial); *Deener v. State*, 214 S.W.3d 522, 527 (Tex. App.—Dallas 2006, pet. ref'd) (holding that the right of confrontation is a forfeitable right that must be preserved by a timely and specific objection at trial); TEX. R. APP. P. 33.1. To preserve error on confrontation grounds when cross-examination of a witness was limited, a defendant must show by a bill of exceptions or an offer of proof what questions he wished to ask and the responses he expected to receive. *See Guidry v. State*, 9 S.W.3d 133, 153 (Tex. Crim. App. 1999) (stating that "[e]rror in the exclusion of evidence may not be urged unless the proponent perfected an offer of proof or a bill of exceptions"); *Easterling v. State*, 710 S.W.2d 569, 578 (Tex. Crim. App. 1986) (holding that when a defendant contends that his right of cross-examination was unduly limited, nothing is preserved for review unless the record shows, "by bill of exception(s) or otherwise," what questions the defendant wanted to propound to the witness and the answers expected therefrom).

Appellant did not argue to the trial court that his right to confrontation demanded that he be allowed to cross-examine Chavarria about whether he had filed a civil lawsuit against appellant. Appellant did not make a bill of exceptions or offer of proof regarding what testimony he sought to elicit from Chavarria or what he anticipated Chavarria's answers to be. We conclude that appellant failed to preserve this issue for appellate review.

## Any Error is Harmless

Even if appellant had preserved this issue for our review, and even if we were to find an abuse of discretion in the trial court's action sustaining the State's objection to appellant's attempted cross-examination of Chavarria, we would not find reversible error.

A harmless error analysis applies when a trial court improperly limits a defendant's cross-examination of a witness for the purpose of exposing the witness's bias. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986); *Shelby v. State*, 819 S.W.2d 544, 546 (Tex. Crim. App. 1991); *see also* TEX. R. APP. P. 44.2(a). Under this analysis, we must first assume that the damaging potential of the cross-examination was fully realized, and then determine whether the error was harmless beyond a reasonable doubt in light of the following factors: (1) the importance of the witness's testimony in the prosecution's case, (2) whether the testimony was cumulative, (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, (4) the extent of cross-examination otherwise permitted, and (5) the overall strength of the prosecution's case. *Shelby*, 819 S.W.2d at 547.

Chavarria, as the complaining witness, was significant to the prosecution. Appellant was allowed to extensively cross-examine Chavarria; this was the only limitation placed on appellant's cross-examination of Chavarria. Other witnesses corroborated Chavarria's version of events; the scorekeeper, McCoy, testified that he saw appellant approach Chavarria, grab him by the shoulders and "head-butt" him while the referee, McClure, testified that it looked to him like an intentional "head-butt." Although appellant presented witnesses who corroborated his testimony that Chavarria was aggressive and gave him provocation, those witnesses did not testify that appellant's "head-butt" had not been the cause of Chavarria's injuries. And appellant did not dispute that Chavarria had suffered injuries, even though he claimed that his head came in contact with Chavarria's teeth accidentally.

–10–

Although no evidence of a civil suit was admitted at trial, the jury was informed that Chavarria was seeking reimbursement for his dental costs during defense counsel's opening statement:

> There is a young man who is going to get on the witness stand and is going to lie, lie, lie, lie, lie some more because he wants a personal injury settlement for his broken teeth. We've already got a letter from personal injury lawyers. That's what this is about.

The State did not challenge this statement, either by objecting at the time it was made or by offering any evidence to the contrary. Additionally, the State presented evidence that Chavarria had found it difficult to pay his dental bills, and that he had spent more than $3000 "so far."

Chavarria's acknowledgement on cross-examination that a civil suit had been filed would have been cumulative of other information already before the jury. It would also have done little to impeach his testimony (which was later impeached by three defense witnesses) that appellant had assaulted him intentionally and caused his injuries. And it would have afforded little, if any, benefit to appellant's defense that his assault on Chavarria was accidental.

We conclude that any error in limiting appellant's cross-examination of Chavarria concerning the existence of a civil lawsuit was harmless. We overrule appellant's issue.

### Conclusion

We affirm the trial court's judgment.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

170735F.U05

–11–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

FRANCISCO J. TRUJILLO-CAMACHO,
Appellant

No. 05-17-00735-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law
No. 4, Collin County, Texas
Trial Court Cause No. 004-84704-2016.
Opinion delivered by Justice Lang-Miers.
Justices Bridges and Francis participating.


Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 22nd day of October, 2018.