Fred GOODSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–88–00205–CR.

Court of Appeals of Texas,
Tyler.

Nov. 4, 1991.

Rehearing Denied June 18, 1992.

**470**

Odis R. Hill, Longview, for appellant.

C. Patrice Savage, Longview, for appellee.

BILL BASS, Justice.

Fred Goodson was convicted by a jury of engaging in organized crime. The jury assessed his punishment at fifteen years confinement and a $10,000 fine. We reverse and remand.

Goodson was indicted with thirty-two others. The indictment alleged that Goodson with intent to establish, maintain and participate in a combination, did knowingly and intentionally conspire to commit the offense of delivery of cocaine. The indictment grew out of an extensive investigation of cocaine trafficking in Gregg County. The investigation focused on the activities of John and Judy Lindley who were among the thirty-two people indicted. The investigating authorities kept the Lindley's apartment under surveillance and tapped the apartment telephone. A search of the Lindley's apartment was executed pursuant to a warrant. A car leased by the Lindleys but not described in the warrant was also searched. Three pounds of cocaine, drug paraphernalia, and weapons were recovered in the search. A notebook detailing numerous drug transactions was recovered in the search of the automobile. Entries in the notebook showed that "Fred" purchased cocaine from the Lindleys. The State also introduced tape recordings of telephone conversations from Goodson to the Lindleys apparently relating to the cocaine sales recorded in the seized notebook.

In his first nine points of error, Goodson contends that the evidence was insufficient for any rational trier of fact to have found beyond a reasonable doubt that he (1) conspired with any indicted person to commit

the offense of unlawful delivery of cocaine, (2) intended to establish, maintain, or participate in a combination, or in the profits of a combination, and (3) committed any of the overt acts charged in pursuance of an agreement to unlawfully deliver cocaine. Goodson's central contention is that the State's case depends upon circumstantial evidence which also reasonably supports the hypothesis that he was buying the cocaine solely for his personal consumption and not for resale.

Appellant was charged with violating TEX.PENAL CODE § 71.02(a)(5), which reads as follows:

(a) A person commits an offense if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination, he commits or conspires to commit one or more of the following:

. . . .

(5) unlawful manufacture, delivery, dispensation, or distribution of a controlled substance or dangerous drug. . . .

The pertinent definitions are contained in TEX.PENAL CODE § 71.01,[1] which at the time the indictment was returned, read as follows:

(a) [A] "[c]ombination" means five or more persons who collaborate in carrying on criminal activities, although:

(1) participants may not know each other's identity;

(2) membership in the combination may change from time to time; and

(3) participants may stand in a wholesaler-retailer or other arm's-length relationship in illicit distribution operations.

(b) "Conspires to commit" means that a person agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense and that person and one or more of them perform an overt act in pursuance of the agreement. An agreement constituting conspiring

to commit may be inferred from the acts of the parties.

The indictment of appellant alleged that on or about September 3, 1986, and continuing until on or about September 12, 1986, appellant and thirty-two others did then and there with the intent to establish, maintain, and participate in a combination and in the profits of a combination, knowingly and intentionally conspire to commit the offense of unlawful delivery of cocaine and agreed among themselves and with each other to engage in this offense and in pursuance of such agreement and in furtherance of it the said defendants performed overt acts. The overt acts alleged against appellant are as follows:

(1) communicated with John Lindley by telephone on or about September 8th, 1986;

(2) met together with John Lindley on or about September 8th, 1986;

(3) made a payment to John Lindley for controlled substance on or about September 8th, 1986.

■ The standard of review for both direct and circumstantial evidence is whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found all of the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Marroquin v. State*, 746 S.W.2d 747, 750 (Tex.Cr.App.1988). Where, as in the instant case, the conviction is based upon circumstantial evidence, the conviction cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the appellant; in other words, if the evidence supports a reasonable inference other than the appellant's guilt, a finding of guilt beyond a reasonable doubt is not rational. *Goff v. State*, 777 S.W.2d 418, 420 (Tex.Cr.App.1989).

■ Direct evidence is seldom available to prove a conspiracy necessarily

---

1. Acts, 65th Leg., ch. 346, § 1, 1977 TEX.GEN. & SPEC.LAWS, *amended by* Acts, 71st Leg., ch. 782, § 1, TEX.GEN. & SPEC.LAWS 3468.

hatched in secrecy. However, the existence of the conspiratorial agreement like other fact may be proven circumstantially. It may be shown by evidence of the conspirators' conduct, including the circumstance surrounding that conduct. *Farrington v. State*, 489 S.W.2d 607 (Tex.Cr. App.1972). Similar methods of operation, together with joint activities and relationships support the finding of a single conspiracy. *United States v. Ochoa*, 609 F.2d 198, 202 (5th Cir.1980); *Kennard v. State*, 649 S.W.2d 752, 764 (Tex.App.—Fort Worth 1983, writ ref'd).

■ Viewed in the light most favorable to the State, the evidence shows that John and Judy Lindley were the hub of an extensive cocaine distribution system in Longview. They served as suppliers of cocaine to a network of smaller dealers including the appellant. Often, the cocaine was advanced or "fronted" to the retail dealer on credit, the Lindleys often receiving payment within a matter of hours when the cocaine was resold. The detailed business records of the enterprise, the surveillance, and wiretaps demonstrate that far more than five persons were included within the combination. At least several of the confederates were on familiar terms and shared their plans and mutual concerns, not only with the Lindleys, but with one another.

The Lindley ledgers show that Goodson made five purchases of cocaine in the period from August 29 until September 10, 1986. In each instance, he bought twenty-eight grams, always paying cash. By purchasing in small quantities, Goodson paid $2,000 more for the cocaine than he would have paid had he bought the same amount in one transaction. The Lindleys called Goodson once during the four weeks the pen register recorded the telephone numbers called from the Lindley telephone. The State also introduced the transcriptions of four telephone calls between Goodson and the Lindleys made during the nine day period the Lindley telephone was tapped. All of the conversations consisted of Goodson indicating that he needed a quantity of cocaine and then arranging for Lindley to

deliver it to him. Goodson's purchases typically followed closely upon the telephone calls. Surveillance evidence showed that John Lindley made no more than three short visits to appellant's house, once in the company of Mike Gibbons who was also charged as one of the conspirators. There was testimony that Goodson's telephone number was included in Lindley's speed dialer along with twenty-seven others. Ranger Lane Akin, a narcotics officer, testified that an ordinary cocaine user's consumption generally did not exceed one gram a day, and that therefore, the purchase of an average twelve grams a day demonstrated that Goodson bought the drugs for resale. Finally, Kim Gibbons testified for the State under a grant of immunity, that John Lindley told her that her husband, Mike Gibbons, owed him $700 for high priced "champagne" (cocaine) and that he owed "Fred" $13,000.

Appellant strenuously argues that Lindley made fewer calls to Goodson than to any of the other defendants charged. In none of the conversations did they discuss the delivery of cocaine to any other person. Unlike the other defendants, none of the cocaine was "fronted" or advanced on credit to Goodson. Lindley's two or three visits were short, allowing no time for planning any scheme for narcotics distribution. The inclusion of Goodson's telephone number among the twenty-seven on Lindley's speed dialer is entirely consistent with Goodson's defense that he was a heavy user, and hence, a good customer. During the surveillance period, appellant was never observed at Lindley's house or anywhere else. There is no evidence that any of the other conspirators ever visited Goodson's house except John Lindley and Mike Gibbons. It can be inferred from one of the taped conversations that Judy Lindley did not know Goodson.

Goodson argues that, in the absence of any evidence of deliveries, incriminating surveillance or conversations, evidence of fronting or other evidence tending to prove that Goodson had conspired to deliver, rather than only possess cocaine, the State relied heavily on Akin's opinion testimony that one gram a day was a normal limit and

twelve grams a day too much to be purchased for personal consumption. Goodson points out that the reference book introduced by the State noted that cocaine consumption of seven grams a day in free-base form was not unusual and that higher amounts had been observed. When Goodson was arrested, his residence was not searched and so it cannot be determined how much, if any, of the cocaine recently purchased remained in his possession.

Finally, Kim Gibbons testified that John Lindley did not tell her what the $13,000 debt to "Fred" was for. Mike Gibbons told her that the debt was to promote a George Jones concert the previous year and that he no longer owed Goodson any money. Nevertheless, because of the statement's context, the jury easily could have assumed that the debt was for cocaine.

The sufficiency of the evidence to support Goodson's conviction is a close question. However, in making a sufficiency determination, we must consider all of the evidence, including the evidence improperly admitted. *Faulder v. State*, 745 S.W.2d 327, 330 (Tex.Cr.App.1987). Considering all the evidence, including the erroneously admitted testimony of Kim Gibbons in the light most favorable to the prosecution, we conclude that there was sufficient evidence for a rational trier of fact to have found all of the elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 320, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Dickey v. State*, 693 S.W.2d 386, 387 (Tex.Cr.App.1984).

■ Goodson, by his tenth point of error, maintains that the trial court erred in overruling his "objection to the opinion testimony of Lane Akin concerning whether Goodson was purchasing cocaine for resale, and concerning an unspecified cocaine user's peak daily consumption of cocaine, because the State failed to lay the proper predicate for its admission as expert testimony."

Officer Akin testified that he had reviewed the record of drug transactions kept by Judy Lindley in the spiral notebooks for "Fred." "Fred," he stated, made five separate cocaine purchases over twelve days totaling 143 grams for a total price of $8,160. At this point, the following exchange occurred:

Q: Do you have an opinion based on reviewing those books whether or not the person in subsection "Fred" was buying cocaine for personal use or resale?

A: For resale.

MR. HILL: Your honor, we object to that. That's just more or less speculation, guessing, making this witness testify. There's nothing in those books that would in any way suggest to anyone that this is for resale. That is purely a guess on his part.

THE COURT: Overrule your objection.

In this court, Goodson claims this was expert testimony improperly admitted, because no proper predicate had been established. However, that was not the objection advanced at trial. The objection to challenged evidence raised on appeal must comport with the objection made at trial. No error is presented.

■ The prosecutor then asked Officer Akin to explain to the jury about the normal use of cocaine and how much the user would use, based upon his experience as a law enforcement officer. Goodson's attorney promptly objected that Akin was not qualified to answer the question. The court overruled the objection, and Akin subsequently testified that "it would be unusual for a person to use much more than a gram in a day's time."

Ranger Akin had testified that he had been a narcotics officer for five of his twelve years with the Department of Public Safety. During that period he had participated in various narcotics investigations and drug seizures. He testified that he had gained a working knowledge of narcotics paraphernalia, and he detailed how they were employed by drug dealers and users. He also stated that he had investigated "cocaine transactions and how cocaine is bought and used on the streets."

The trial judge must decide both whether the subject in issue is one in which the expert's opinion would aid the jury, and if so, whether the proffered witness has the

requisite qualifications. *Holloway v. State*, 613 S.W.2d 497, 501 (Tex.Cr.App. 1981); R. RAY, LAW OF EVIDENCE, 2 TEXAS PRACTICE § 1401 (3rd ed. 1980). The trial judge's decision will not be disturbed in the absence of a clear abuse of discretion. *Steve v. State*, 614 S.W.2d 137, 139 (Tex.Cr. App.1981).

There can be no doubt that the subject of inquiry was one upon which expert opinion would assist the jury. From the other knowledge Akin testified he had acquired during his five years as a narcotics officer, it may be inferred that he was also familiar with the normal limits of cocaine use. The trial judge did not clearly abuse his discretion in admitting Akin's testimony over the objection posed by appellant. Goodson's tenth point is overruled.

In his eleventh point, Goodson contends that the trial court committed reversible error in overruling his objections to the prosecutor's remarks during closing argument calling for him to respond to parts of the State's evidence, because the prosecutor's argument constituted a comment on his decision not to testify.

During the State's rebuttal in final argument, the prosecutor made the following argument:

> Don't you know that if Fred Goodson had some kind of legitimate source of income, that kind of money, access to that kind of money legitimately, don't you know that he would have had an account or a banker—
>
> ... Mr. Hill wants you to draw certain inference on some things, but wants you to just throw your common sense out the window o[n] some other things. Don't you know if there was an account, if you knew he had a legitimate source of income, don't you know that if there was a banker that could come tell you Fred Goodson had that much money—
>
> ... Don't you know if there was an employer that was paying him sixteen hundred dollars every other day that they'd call them up here to show you that that money wasn't derive [sic] from the sale of cocaine....

If Fred Goodson was a user, they told you that he'd have to be using almost twelve grams a day. [T]here's not any evidence in these books published by people who are dealing cocaine, even in their own little self-serving information, there's not any kind of evidence of anybody using that much cocaine on their own..[..] Don't you know if there was an expert witness out there that would refute what Investigator Akin told you, that they would have called him. Use your common sense.

■ Before a prosecutor's argument can be construed as an improper comment on the defendant's failure to testify, the language used must be viewed from the jury's standpoint. *Nowlin v. State*, 507 S.W.2d 534, 536 (Tex.Cr.App.1974). If the prosecutor's remarks do not constitute a direct attack on the defendant's failure to testify, the language must be such that the jury would have "necessarily and naturally" taken it as a comment on the defendant's election not to testify. *Montoya v. State*, 744 S.W.2d 15, 35 (Tex.Cr.App.1987).

■ In this case, the prosecutor remarked upon the defendant's failure to call an expert witness on cocaine use to rebut the testimony of Officer Akin. The prosecutor also alluded to defendant's failure to produce a banker, accountant, or employer to show a legitimate source for his money, a matter Goodson himself raised in closing argument. The remarks were comments on Goodson's failure to produce evidence through other witnesses, and they were not couched in language that the jury would necessarily and naturally have taken as a comment on Goodson's failure to testify. Appellant's eleventh point is overruled.

■ In his twelfth point of error, Goodson contends that the trial court reversibly erred in admitting the testimony of State's witness Kim Gibbons that John Lindley had told her that her husband owed "Fred" $13,000.

Kim Gibbons, the wife of one of the original co-defendants, testified at appellant's trial that John Lindley told her that her husband owed him $700 for cocaine and owed "Fred" $13,000. The statement was

made during the period of the conspiracy. However, John Lindley did not say, nor did Kim know, what the debt, if any, was for. Shortly thereafter, her husband told her that he didn't owe Goodson any money, although he had borrowed money from Goodson to promote a George Jones concert. She testified that her husband told her that he had borrowed the money before they got married. Appellant introduced a promissory note to him from Mike Gibbons dated June 21, 1985 in the amount of $7,500 with interest at the rate of fifteen percent.

The State argues that the statement regarding the $13,000 debt to "Fred" was admissible as the statement of a co-conspirator made during the course of the conspiracy.

TEX.R.CRIM.EVID. 801(e)(2)(E) provides that a statement is not hearsay if made by a co-conspirator of a party during the course and in furtherance of the conspiracy.

The State argues that the conspiracy is easily inferable from the circumstances of this case, and that the statement was made before the completion of the conspiracy. Therefore, the State maintains the statement is admissible.

Goodson argues, first, that there is insufficient evidence to show his participation in the conspiracy, and second, that there is no evidence that the statement was made in furtherance of the conspiracy. The appellant argues that what evidence there is indicates that the debt referred to in the statement originated before the conspiracy and did not concern the narcotics traffic at all.

Until the adoption of Rule 801(e)(2)(E), September 1, 1986, there existed some uncertainty whether, in order to be admissible, the co-conspirator's statement need be actually in furtherance of the conspiracy or merely related to it. However, the Court of Criminal Appeals settled the question in *Williams v. State*, 790 S.W.2d 643 (Tex.Cr. App.1990). In *Williams*, the Court held that, whatever the state of the law before the enactment of Rule 801(e)(2)(E), the Rule plainly required that the statement be "in furtherance of" the conspiracy and not

simply related to it. 790 S.W.2d at 645. The State relies on the Amarillo Court of Appeals' decision in *Hadley v. State*, 735 S.W.2d 522 (Tex.App.—Amarillo 1987, writ ref'd), which antedated *Williams* and did not discuss the requirement that the co-conspirator's statement be made in furtherance of the conspiracy in order to be admissible.

■ We agree with Goodson that the debt referred to in the challenged statement was apparently unrelated to the conspiracy. There is no evidence from which it can be determined that the statement was in furtherance of the conspiracy. The trial court erred in admitting Gibbons' statement *regarding* the debt to "Fred." While we have held that, viewed in the light most favorable to the verdict, the evidence is sufficient for the jury to have found each element of the crime beyond a reasonable doubt, nevertheless, the question of Goodson's guilt was a close one. We cannot conclude, beyond a reasonable doubt, that the erroneously admitted evidence did not contribute to Goodson's conviction or punishment. The point is sustained.

■ In his thirteenth point of error, Goodson urges that the trial court reversibly erred in overruling his motion to quash the indictment for the failure of the indictment to allege as an element of the offense, that at least two persons remained in the combination, in a continuing course of conduct.

TEX.PENAL CODE ANN. § 71.03(4) (Vernon 1989) provides that it is no defense to prosecution under Section 71.02 of the PENAL CODE that:

(4) once the initial combination of five or more persons is formed there is a change in the number or identity of persons in the combination as long as two or more persons remain in the combination and are involved in a continuing course of conduct constituting an offense under this chapter.

Goodson argues that "the structure of chapter 71 indicates that section 71.02 incorporates some of the terms defined in

# 476

other provisions as elements, and specifically incorporates as an element of the offense of engaging in organized crime the requirement that two or more persons remain in the combination in a continuing course of conduct constituting an offense."

Goodson's argument has been rejected in *Kennard v. State*, 649 S.W.2d 752, 766 (Tex.App.—Fort Worth 1983, pet. ref'd). Appellant was charged under Tex.Penal Code Ann. § 71.02 proscribing engaging in organized criminal activity. That section does not require "continuing involvement of two or more persons in a continuing course of conduct." The *Kennard* court concluded that the purpose of section 71.03 was to exclude certain defenses, not to create new elements of the offense already set out in section 71.02. *Id.* We agree. Appellant's thirteenth point is overruled.

The judgment is reversed and the cause remanded.