NO. 07-00-0299-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JANUARY 10, 2001 

______________________________

NICHOLAS BUTTS,

Appellant

V.

THE STATE OF TEXAS, 

Appellee

_________________________________

FROM THE COUNTY CRIMINAL COURT AT LAW NO. 14 OF HARRIS COUNTY;

NO. 0980483; HON. MICHAEL R. FIELDS, PRESIDING

_______________________________

Before BOYD, C.J., and QUINN and REAVIS, JJ.

Nicholas Butts, appellant, appeals his conviction of misdemeanor theft.  Through six issues, appellant claims that 1) the evidence was legally and factually insufficient to support his conviction, 2) prosecutorial misconduct occurred when the prosecutor called the co-defendant as a witness knowing he would refuse to testify pursuant to the Fifth Amendment and then improperly commenting on appellant's failure to testify, and 3) the trial court erred by disallowing the testimony of a defense witness and, when excluding said testimony, the court improperly commented on the weight of the evidence.  We affirm.

 
Background

Because appellant has challenged the sufficiency of the evidence, we will set forth the relevant facts adduced at trial.  Appellant was employed by Stubbs Cycles (Stubbs), a motorcycle dealership that sells Harley Davidson (Harley) and Japanese brand motorcycles.  Michael Turner (Turner), Stubbs' business and operations manager, was the complaining witness on Stubbs' behalf and testified at trial concerning a theft that was perpetrated upon the business by appellant.  Appellant was employed as a parts salesman at the time of the incident.  Stubbs had in place a procedure for selling parts and accessories when a customer purchased a new motorcycle and wished to purchase additional merchandise.  These additional purchases were referred to as internal transactions or sales to "major units" (referring to the motorcycle).

When a customer purchased a motorcycle and then also wanted a part or accessory such as a helmet, jacket or some other item, the motorcycle sales person would request the merchandise from a parts sales person at the parts counter.  The motorcycle sales person would also give the vehicle identification number (VIN) of the motorcycle for the purpose of "attaching" the items to the correct motorcycle.  The parts sales person would then enter the information into the computer and print an invoice.  Then, according to Turner, the sales person would get the approval of the transaction by having a sales manager for either the parts department or the motorcycle sales department to initial the invoice generated by the transaction.  The merchandise would then be included in the sale of the motorcycle and, if the motorcycle was financed, the merchandise would be paid for through the customer's monthly payment.  ln other words, money never exchanged hands 

in an internal transaction and the merchandise was charged to the "major unit" (the motorcycle).  Furthermore, the merchandise was placed with the motorcycle until the customer picked both it and the motorcycle up from the store.

On or about November 26, 1999, at around 6:00 p.m., appellant made two internal transactions within a few minutes of each other.  The subject merchandise included two helmet shields, a helmet and a jacket.  All items were made for use with Japanese motorcycles.  The next morning appellant's immediate supervisor noticed the two transactions and immediately thought they were strange because the invoices did not contain approval from a sales manager.  Furthermore, the two VINs used for the transactions belonged to two Harley motorcycles.  Appellant's supervisor took the invoices to the parts manager to see if he had any knowledge of the transactions.  The parts manager testified that he did not.  Finally, the invoices were brought to the attention of Turner who questioned appellant regarding the sales.  Initially, Appellant stated that he did not remember any of the details surrounding the transactions (even though they were two of only three transactions made within a two hour period the night before) because he was very busy during the relevant time period.

Turner began an investigation regarding the invoices and, as part of the investigation, he reviewed a videotape from a camera poised at the parts counter.  In the video, appellant is seen entering the two suspect transactions in the computer and handing the items already bagged to another employee, Neill McNeill (McNeill).  McNeill then took the items and walked away from the counter.  The investigation further revealed that the two VINs used were assigned to two motorcycles that were sold the week before and that neither the sales persons of those motorcycles nor the purchasers ordered or received the 

subject merchandise.  Turner testified that, after learning these details, he confronted appellant again and that appellant became nervous and then angry.  Appellant was then fired for failure to follow procedure.  Subsequently, appellant was charged with theft and convicted of same by a jury.  With the foregoing said, we now address appellant's issues on appeal.

Issues One and Two: Sufficiency of the Evidence

In his first two issues, appellant alleges that the jury's verdict lacks legally and factually sufficient evidentiary support.  We disagree and overrule both issues.

1. Standard of Review

The standards of review applicable to claims of legal and factual sufficiency are well-settled and do not bear repeating.  It is sufficient to cite the parties to 
Johnson v.
 
State, 
23 S.W.3d 1,7 (Tex. Crim. App. 2000) and 
King v. State, 
895 S.W.2d 701 (Tex. Crim. App. 1995) for an explanation of same.

2.
 
Application of Standard

Appellant argues that the State failed to prove theft because the evidence presented only showed that appellant made two internal transactions, not that he committed theft.  In perusing the record, we find that evidence exists from which the following could reasonably be found or inferred: 1) appellant made two transactions within minutes of each other which was unusual for those types of transactions; 2) appellant and McNeill were shown on the videotape making the suspicious transactions, with McNeill walking off with the bagged merchandise; 3) in an internal transaction, the merchandise is rarely bagged and the motorcycle salesman rarely takes the merchandise with him; 4) merchandise sold in an internal transaction is placed or becomes "attached" to the motorcycle until the customer picks it up; 5) appellant failed to get a supervisor to approve the sales; 6) the merchandise was made for use with a Japanese motorcycle but was sold to a Harley VIN; 7) no motorcycle salesmen ever ordered or received the merchandise, nor did a customer; 8) when initially questioned, appellant denied knowledge of the transactions but when questioned again he became nervous and then angry; 9) the two transactions were made minutes after appellant's supervisor left for the day; 10) Turner testified that he had the greater right to possess the merchandise; 11) Turner testified that the value of the merchandise taken was between $500 and $1500, and 12) the jury was charged on the law of parties.  From this, a jury could conclude beyond reasonable doubt that appellant committed a Class A misdemeanor theft.  See 
Tex. Pen. Code Ann. 
§ 31.03 (Vernon Supp. 2000) (stating the elements and punishment range for theft).  Accordingly, the verdict is supported by legally sufficient evidence.

Admittedly, the evidence was not free of contradiction.  For instance, appellant presented two witnesses who were prior employees of Stubbs.  Although both were employed for a short period of time, they both testified about the policies and procedures, or the lack thereof, implemented by Stubbs.  Staci Shott (Shott) testified that she was a parts sales person and that she rarely received manager approval or obtained a manager's initials on merchandise invoices.  Moreover, Shott testified that there was no procedure in place regarding this matter until after this incident.  Another ex-employee, Scott Babbitt (Babbitt), testified that he was a motorcycle sales person at the time the incident occurred.  He testified that, because of the competitive nature of motorcycle sales at Stubbs, motorcycle sales persons at Stubbs would generally follow through with a sale until its completion, even if this meant going to the parts counter and obtaining additional merchandise that had been requested by the customer.  Thus, Babbitt surmised that the fact that McNeill waited on the bagged merchandise was not so strange because motorcycle sales personnel had to protect their customers or another sales person would take them away.  Therefore, the sales persons had to follow through on the sale until completed.  Yet, we cannot say that these circumstances and the other evidence of record rendered the verdict clearly erroneous or manifestly unjust.  They created issues of fact for the jury to decide, therefore, the verdict does not lack factually sufficient support.

In appellant's third issue, he contends that the prosecutor acted improperly when she called the co-defendant to the witness stand with the knowledge that he would not testify pursuant to the Fifth Amendment.  In order to preserve error in cases of prosecutorial misconduct, the defendant must 1) make a timely and specific objection; 2) request an instruction that the jury disregard the matter improperly placed before the jury; and 3) move for a mistrial.  
Penry v. State, 
903 S.W.2d 715, 764 (Tex. Crim. App. 1995) 
citing Cook v. State, 
858 S.W.2d 467, 473 (Tex. Crim. App. 1993).

During a pre-trial hearing in the present case, defense counsel made the following objection: "I object to the prosecutor's calling [the co-defendant] as a witness in front of the jury.  Her calling a . . . co-defendant who will take the Fifth Amendment is . . . a comment on . . . the Co-Defendant's Fifth Amendment right, which is improper."  The court agreed but further stated that it could not control the State's decision to call witnesses and it had no knowledge of whether or not the co-defendant would testify.  At the time of trial, counsel objected again when the State called the co-defendant to the stand.  This time, counsel argued that the State should not be permitted to call the co-defendant since he was going to take the Fifth.  The trial court excused the jury and the State was permitted to begin questioning the witness.  In response to the State's first question, the co­defendant stated that, upon the advice of his attorney, he would take the Fifth.  The trial court asked the co-defendant if he was planning to answer the same to all questions and he answered in the affirmative.  The trial court then excused him before re-seating the jury.  The State requested an instruction regarding "the circumstances" surrounding the fact that the co-defendant "was called to the stand," but was not allowed to testify.  However, defense counsel objected to this request, thus, no instruction was given.  The State then rested.  No further objections or requests were made by appellant regarding the co-­defendant.  Because appellant failed to go further and request a mistrial, he was given all of the relief he requested.  That is, he objected to the State calling the co-defendant to the witness stand in order for him to invoke his Fifth Amendment right in front of the jury and the trial court sustained the objection.  Thus, there was no error.  
White v. State, 
934 S.W.2d 895 (Tex. App.--Fort Worth 1996 no pet.).  Therefore, we overrule appellant's third issue.

In his fourth and fifth issues, appellant contends that the trial court erred by excluding testimony from a defense witness and that the comment made by the trial court regarding the witness's testimony was an improper comment on the weight of the evidence.  We disagree.

In reviewing the trial court's decision to exclude evidence, we reverse only if the trial

court abused its discretion. 
Mozon v. State, 
991 S.W.2d 841, 846-47 (Tex. Crim. App. 1999); 
Holloway v. State, 
751 S.W.2d 866, 870 (Tex. Crim. App. 1988); 
Wofford v. State, 
903 S.W.2d 796, 799 (Tex.App.--Dallas 1995, pet. ref’d).  A trial court abuses its discretion when its "decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree."  
Cantu v. State, 
842 S.W.2d 667, 682 (Tex. Crim. App. 1992) 
cert. denied
,  509 U.S.926,113 S. Ct. 3046, 125 L. Ed.2d 731 (1993); 
Wofford, 
903 S.W.2d at 799.  A trial court's refusal to admit evidence is reversible only if the evidence is relevant and its exclusion harmed the accused.  
Canto-Depoit v. State, 
751 S.W.2d 698, 700 (Tex. App.--Houston [lst Dist.] 1988, pet. ref’d); 
see Bird v. State, 
692 S.W.2d 65, 73 (Tex. Crim. App. 1985), 
cert. denied, 
475 U.S. 1031, 106 S.Ct. 1238, 89 L. Ed.2d 346 (1986).  The test for determining this harm is whether there is a reasonable probability that the absence of that evidence contributed to the conviction or punishment. 
Canto-Deport, 
751 S.W.2d at 700; 
see Alexander v. State, 
740 S.W.2d 749, 765 (Tex. Crim. App.1987).

Furthermore, we are to consider the facts and circumstances of each case that involves the trial court's refusal to admit evidence.  
Canto-Deport, 
751 S.W.2d at 700.  In regards to cumulative testimony, it is within the trial court's discretion to refuse to allow such testimony.  
Blalock v. State, 
728 S.W.2d 135, 137 (Tex.App.--Houston [14th Dist.] 1987, pet. ref’d).  Furthermore, if the import of the excluded evidence is conveyed to the trier of fact through other evidence, no error is shown.  
Id.; See Easterling v. State, 
710 S.W.2d 569,574 (Tex. Crim. App.1986); Johnson v. State, 583 S.W.2d 399, 404 (Tex. Crim. App. 1979).

Here, appellant's fourth and fifth issues concern the excluded testimony of John Hughes (Hughes).  After calling Hughes to testify, the trial court asked the defense counsel whether the witness was going to testify to something other than that addressed by the prior two defense witnesses.  Defense counsel stated that Hughes's testimony would be regarding the same subject matter of the store's policies.  The trial court disallowed Hughes's testimony, however, he was allowed to answer questions on a voir dire/bill of exception type offer of evidence.  The answers pertained to whether or not Stubbs had policies and procedures in place which required manager approval on all internal transactions.  We note that Hughes's testimony was the same as Shoft's and Babbitt's and was cumulative of their testimony.  On appeal, appellant argues that because Hughes had been employed by Stubbs longer than the other two defense witnesses, he would have been more credible with the jury.  Appellant did not urge this to the trial court, but rather advised the trial court that Hughes's testimony would be the same as the other two defense witnesses.  Thus, by his own admission, the evidence was cumulative.

Appellant further contends that the trial court's comments, while disallowing Hughes's testimony, were a comment on the weight of the evidence.  The specific comment complained of involved the statement that calling Hughes "would be a waste of time."  Thus, according to appellant, the trial court violated article 38.05 of the Texas Code of Criminal Procedure.  We disagree.

Article 38.05 states the following:  “In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.”  
TEX. CODE CRIM. PROC. ANN. 
art. 38.05 (Vernon 1999).  To constitute reversible error in violation of article 38.05, the comment in question must be such that it is reasonably calculated to prejudice the appellant's rights by injuring him or

 benefitting the State.  
Minor v. State, 
469 S.W.2d 579, 580 (Tex. Crim. App. 1971).  However, appellant fails to argue exactly how the court's comment violated article 38.05 by either injuring him or benefitting the State.  ln reviewing the relevant portion of the record, we find the following exchange:

THE COURT: I trust he's gonna say something different from what these other two people said?

MR. FRY: I think he's gonna say the same, Your Honor, what the policy was.

THE COURT: If he's gonna say the same, we're wasting this jury's time at some point saying the same thing over and over again, so let's make it brief.

MR. FRY: Your Honor, I'm gonna object to the Court's comment that it's a waste of time.

THE COURT: Well then, if he's gonna say the same thing, he can't testify.

You're excused, sir.

We conclude that the comment was not in any way reasonably calculated to benefit the State or prejudice appellant.  
See Davis v. State, 
651 S.W.2d 787, 790 (Tex. Crim. App. 1983).  Thus, we overrule appellant's fourth and fifth issues.

Through his sixth issue, appellant contends that the prosecutor improperly commented on appellant's failure to testify during closing argument.  We disagree.  The four areas of permissible jury argument are 1) summary of the evidence; 2) reasonable deduction from the evidence; 3) in response to argument of opposing counsel; and 4) pleas to law enforcement.  
Long v. State, 
823 S.W.2d 259, 267 (Tex. Crim. App. 1991), 
cert.
 
denied, 
505 U.S. 1224, 112 S.Ct. 3042, 120 L. Ed. 2d 910 (1992).  Reversible error results from improper jury argument only when, examined in light of the entire record, the argument is "extreme, manifestly improper, injects new and harmful facts into [the] case or violates a mandatory statutory provision." 
 Id. citing Hemandez v. State, 
819 S.W.2d 806, 820 (Tex. Crim. App. 1991), 
cert. denied, 
504 U.S. 974, 112 S.Ct. 2944, 119 L. Ed. 2d 568 (1992).  An instruction to the jury to disregard an improper jury argument is generally sufficient to cure error.  
Dinkins v. State, 
894 S.W.2d 330, 357 (Tex. Crim. App 1995), 
cert. denied, 
516 U.S. 832, 116 S. Ct. 106, 133 L. Ed. 2d 59 (1995).

In the case before us, we must determine whether the prosecutor committed wrongdoing during closing argument when she argued the following:

Joel Morris went and talked to the Defendant, gave him a chance to explain what happened.  'I don't know, I was busy.'  Michael Turner.  I asked him, 'How many customers did Nicholas Butts have between the hours of 5:00 and 7:00?'  'Three.' I asked him, 'Would you consider that busy?'  'No.' What did he say?  'it was dead time.'  He's a liar.  He lies.  He lies.

At this time, defense counsel objected based on "a comment on defendant's failure to testify."  The trial court sustained the objection, defense counsel then requested an instruction be given to the jury.  The trial court complied.  Finally, counsel requested a mistrial which was denied.

First, we find that the aforementioned argument pertained to the implausible explanation appellant gave his manager regarding the sales transactions.  That explanation being that he was too busy when the transactions occurred
 to remember them
 (even though appellant only waited on three customers during the two hour period).  Next, the prosecutor's statement itself mentioned nothing about appellant personally failing to provide the information.  Given the foregoing circumstances, and the context in which the statement was uttered, the comment can be reasonably construed that the appellant lied when he told his manager that he was too busy and could not remember the suspect transactions.  In other words, it could not be reasonably interpreted as naturally and necessarily alluding to appellant's silence.  This being so, it did not trigger application of the rule prohibiting comment upon an accused's silence.  
See Goodson v. State, 
840 S.W.2d 469, 474 (Tex.  App.--Tyler 1991, pet. ref'd) (holding that remarks by a prosecutor about a defendant's failure to produce a banker, accountant, or employer to explain his sources of income were not an improper comment on Goodson's failure to testify).

Lastly, because the comment was not improper, we cannot hold that the trial court erred in refusing to declare a mistrial when it was made.
(footnote: 1)  In this case, the trial judge immediately instructed the jury to disregard the statement and to "consider it for no purpose whatsoever."  The court's instruction was sufficient to cure any error, if indeed there was error.  Thus, we overrule appellant's sixth issue

Accordingly, we affirm the judgment of the trial court.

Per curiam

Do not publish.

FOOTNOTES
1:
1
 
Appellant did allude to at least one other instance in which an improper comment was purportedly made.  Yet, he objected to only the one that we addressed supra.  Thus, any complaint regarding the other was waived.
  
TEX. 
R
. 
App
. P. 33.1; 
Garcia v. State
, 887 S.W.2d 862, 877 (Tex.  Crim.  App. 1994), 
cert. denied
, 514 U.S. 1021, 115 S. Ct. 1368, 131 L. Ed. 223 (1995) .