IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00036-CR

 

Kendrick Marcel Overton,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 13th District Court

Navarro County, Texas

Trial Court No. 30147

 



MEMORANDUM  Opinion



 








            After Kendrick Marcel Overton pleaded
guilty to possession of cocaine with intent to deliver, the court found him
guilty, and a jury assessed his punishment at seventy-five years’ imprisonment
and a $10,000 fine.  Overton contends in three issues that the court abused its
discretion by: (1) permitting a narcotics officer to offer expert testimony
regarding the street value of cocaine; (2) permitting this officer to testify
that narcotics dealers avoid Collin County because of the higher sentences
typically imposed there in narcotics cases; and (3) admitting evidence that a
loaded handgun was found in the trunk of the car he was riding in when
arrested.  We will affirm.

Expert Testimony

            Overton contends in his first issue
that the court abused its discretion by permitting a narcotics officer to offer
expert testimony regarding the street value of cocaine.  Overton’s specific
complaint is that the State failed to show that the officer had the requisite
qualifications to provide expert testimony.

            We review a trial court’s ruling on
the admissibility of evidence for abuse of discretion.  McDonald v. State,
179 S.W.3d 571, 576 (Tex. Crim. App. 2005).  “A trial court abuses its
discretion when its decision is so clearly wrong as to lie outside that zone
within which reasonable persons might disagree.”  Id.  The same standard
applies when we consider a court’s ruling on the admissibility of expert
testimony.  Ellison v. State, 201 S.W.3d 714, 723 (Tex. Crim. App. 2006).

            Before admitting expert testimony
under Rule of Evidence 702, the trial court must be satisfied that: (1) the
witness qualifies as an expert because of his knowledge, skill, experience,
training, or education; (2) the subject matter of the testimony is an
appropriate one for expert testimony; and (3) admitting the expert testimony
will actually assist the fact-finder in deciding the case.  Rodgers v. State,
205 S.W.3d 525, 527 (Tex. Crim. App. 2006).

            Here, Sergeant Michael Turner
testified that he had been employed by the Department of Public Safety for
twenty-four years at the time of trial.[1]  He
had spent “a little more than nine years” in the narcotics division.  When he
started in the narcotics division, he attended a four-week academy which
focused on narcotics training and undercover work.  In addition, he regularly
participates in ongoing training in this field.  He has participated in
“hundreds” of drug investigations during his career and has made “close to a
thousand” undercover drug buys.

            Turner testified that on the occasion
in question he and other officers established surveillance on Interstate 45
based on information that Overton had purchased a large quantity of cocaine in
the Dallas area for distribution in Navarro County.  He examined the three
latex gloves filled with cocaine which had been removed from Overton’s shorts
when he was arrested and testified without objection that this is a common way
for cocaine to be packaged.  He testified, based on his experience (and without
objection), that Overton had likely intended to take the 500 grams of powder
cocaine seized from his shorts, convert it to crack cocaine, and then
distribute it in the Corsicana area.

            Overton objected to Turner’s expert
qualifications when the prosecutor asked him how much Overton had paid for the
seized cocaine.  The court asked the prosecutor to proffer testimony on
Turner’s qualifications.  Turner testified that he has become familiar with the
street value or wholesale value of drugs based on the drug schools he’s
attended and the drug buys he’s done and that he is familiar with the value of
cocaine in particular based on this training and experience.  The court
overruled Overton’s objection.  Turner testified that Overton likely paid about
$9,000 for the one-half kilo of powder cocaine in his possession and that he
could have grossed about $100,000 by converting it to crack cocaine and selling
it in that form.

            Texas courts have long held that
officers with similar training and experience are qualified to provide expert
testimony on various aspects of narcotics trafficking.  See, e.g., Taylor v.
State, 106 S.W.3d 827, 832-33 (Tex. App.—Dallas 2003, no pet.); Williams
v. State, 826 S.W.2d 783, 785 (Tex. App.—Houston [14th Dist.] 1992, pet.
ref’d); Goodson v. State, 840 S.W.2d 469, 473-74 (Tex. App.—Tyler 1991, pet. ref’d); see also Holmes v. State, 135 S.W.3d 178, 182-84 (Tex.
App.—Waco 2004, no pet.) (blood spatter); DeLarue v. State, 102 S.W.3d 388,
396-97 (Tex. App.—Houston [14th Dist.] 2003, pet. ref’d) (accident
reconstruction).  Thus, we cannot say that the court abused its discretion by
overruling Overton’s objection to Turner’s qualifications to provide expert
testimony regarding the street value of cocaine.  Accordingly, Overton’s first
issue is overruled.

Sentences in Collin County

            Overton contends in his second issue
that the court abused its discretion by permitting Turner to testify that
narcotics dealers avoid Collin County because of the higher sentences typically
imposed there in narcotics cases.  Because Overton did not object to most of
Turner’s testimony on this subject, he contends that the admission of the
testimony constitutes fundamental error.

            After Turner testified about the
street value of the cocaine, the prosecutor asked him about whether it was
difficult to arrange drug buys in Collin County.  Overton objected that the
question called for speculation, was misleading, and was intended to taint the
jury.[2]  The
court sustained the objection “as to that question.”  Turner then testified
without objection that narcotics dealers don’t want to sell in Collin County “because of the stiff sentences handed down by juries” and that the dealers he’s
interacted with know where the Collin County line is.

            Complaints regarding the admissibility
of evidence do no present fundamental error.  See Scott v. State, 167
S.W.3d 62, 66 (Tex. App.—Waco 2005, pet. ref’d).  Accordingly, we overrule
Overton’s second issue.

Handgun Evidence

            Overton contends in his third issue
that the court abused its discretion by admitting evidence that a loaded
handgun was found in the trunk of the car he was riding in when arrested.

            Under article 37.07, section 3(a)(1)
of the Code of Criminal Procedure, evidence may be admitted regarding “any
matter the court deems relevant to sentencing” including evidence of “the
circumstances of the offense” and evidence of any extraneous offense “shown
beyond a reasonable doubt to have been committed by the defendant or for which
he could be held criminally responsible.”  Tex.
Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Vernon 2006).

            Despite the Legislature’s use of the
term “relevant” to describe evidence admissible during the punishment phase,
the Court of Criminal Appeals has explained that “the admissibility of evidence
at the punishment phase of a non-capital felony offense is a function of policy
rather than relevance.”  Rodriguez v. State, 203 S.W.3d 837, 842 (Tex. Crim. App. 2006).  “Determining what is relevant then should be a question of what is
helpful to the jury in determining the appropriate sentence for a particular defendant
in a particular case.”  Id.  Under this standard, evidence may be
admissible as a circumstance of the offense “so long as that evidence ‘has some
bearing on the defendant’s “personal responsibility and moral guilt.”’”  Stavinoha
v. State, 808 S.W.2d 76, 78-79 (Tex. Crim. App. 1991) (per curiam) (quoting
Miller-El v. State, 782 S.W.2d 892, 896 (Tex. Crim. App. 1990) (quoting Booth
v. Maryland, 482 U.S. 496, 502, 107 S. Ct. 2529, 2533, 96 L. Ed. 2d 440
(1987)));[3] accord
Jagaroo v. State, 180 S.W.3d 793, 798 (Tex. App.—Houston [14th Dist.] 2005,
pet. ref’d); see also Rodriguez, 203 S.W.3d at 842 (noting that
extraneous offenses committed by other parties to the offense were helpful to
the jury “in determining Appellant’s moral blameworthiness”).

            As stated, officers had Overton under
surveillance.  They stopped the car he was riding in because they knew he had
outstanding traffic warrants.  Over Overton’s objection, one of the arresting
officers testified that a loaded handgun was found in the trunk, and the
handgun was admitted in evidence.  However, Overton was not driving the car,
and there is no evidence in the record that he had any ownership or possessory
interest in the car.  When overruling Overton’s objection, the court commented
that it was admitting the testimony “as part of [the] res gestae of the
offense.”

            The term “res gestae” is understood to
refer to “same transaction contextual evidence.”  See Wesbrook v. State,
29 S.W.3d 103, 115 (Tex. Crim. App. 2000); Mayes v. State, 816 S.W.2d 79,
86-87 (Tex. Crim. App. 1991); Moore v. State, 165 S.W.3d 118, 122
(Tex. App.—Fort Worth 2005, no pet.); Carter v. State, 145 S.W.3d 702,
707 n.1 (Tex. App.—Dallas 2004, pet. ref’d).  “’Same transaction contextual
evidence’ refers to those events and circumstances that are intertwined,
inseparable parts of an event that, if viewed in isolation, would make no sense
at all.”  Delgado v. State, 235 S.W.3d 244, 253 (Tex. Crim. App. 2007).

            Here, evidence of the handgun
recovered from the trunk does not qualify under this test.  See Peters v.
State, 93 S.W.3d 347, 353 (Tex. App.—Houston [14th Dist.] 2002, pet. ref’d)
(evidence of sawed-off shotgun found under bed in motel room where defendant
arrested for possession of cocaine not admissible as “same transaction
contextual evidence”).  It simply cannot be said that the evidence regarding
Overton’s possession of cocaine found in his immediate possession “makes no
sense” without consideration of the fact that a handgun was recovered from the
trunk.

            Nor is there evidence providing
sufficient affirmative links to connect Overton to the handgun recovered from
the trunk.  See Jenkins v. State, 76 S.W.3d 709, 715-19 (Tex. App.—Corpus Christi 2002, pet. ref’d) (evidence legally insufficient to support
passenger’s conviction for possession of marihuana found in trunk or possession
of cocaine found under back seat due to lack of affirmative links).  Other than
Overton’s presence in the car, there is no evidence connecting him to the
handgun.  Cf. id. at 715-18 (officer testified that amount of contraband
seized was normally transported by more than one person and that such persons
“tended to travel with weapons”).  Therefore, the evidence regarding the
handgun is not admissible as “same transaction contextual evidence” or as an
extraneous offense.  Because there is scant evidence connecting the handgun to
Overton, the evidence likewise has no bearing on Overton’s “personal
responsibility and moral guilt.”  Thus, the evidence is not admissible as a
“circumstance of the offense” under article 37.07, section 3(a)(1).  For these
reasons, the court abused its discretion by admitting the evidence regarding
the handgun.

            We must now determine whether this
error requires reversal.  The improper admission of evidence of an extraneous
offense is non-constitutional error.  Carter, 145 S.W.3d at 710; Peters,
93 S.W.3d at 354.  Thus, we ask whether this error affected Overton’s
substantial rights.  See Tex. R.
App. P. 44.2(b).  We “consider everything in the record, including any
testimony or physical evidence admitted for the jury’s consideration, the
nature of the evidence supporting the verdict, the character of the alleged
error and how it might be considered in connection with other evidence in the
case.”  Motilla v. State, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002); Shook
v. State, 172 S.W.3d 36, 41 (Tex. App.—Waco 2005, no pet.); accord
Geuder v. State, 142 S.W.3d 372, 376 (Tex. App.—Houston [14th Dist.] 2004,
pet. ref’d).  We may also consider the jury instructions, the State’s theory of
the case, any defensive theories, closing arguments, voir dire, and the extent
to which the State emphasized the erroneously admitted evidence.  See
Motilla, 78 S.W.3d at 355-56; Shook, 172 S.W.3d at 41; Geuder,
142 S.W.3d at 376.

            In this analysis, we decide whether “the
error had a substantial and injurious effect or influence in determining the
jury’s verdict.”  Haley v. State, 173 S.W.3d 510, 518 (Tex. Crim. App. 2005). 
If we have “’a grave doubt’ that the result [of the underlying proceeding] was
free from the substantial influence of the error, then [we] must treat the
error as if it [had a substantial influence on the outcome].”  Burnett v.
State, 88 S.W.3d 633, 637 (Tex. Crim. App. 2002).

            Because Overton pleaded guilty before
the jury, the State no doubt abbreviated its presentation of evidence.  The
State did not refer to the handgun in its opening statement, focusing instead
on the quantity of cocaine seized, the negative impact of drugs in the
community, and Overton’s prior record.  The State’s punishment evidence had
four primary components: (1) Overton’s prior criminal history, including a
prior felony conviction for aggravated assault with a deadly weapon (for
allegedly shooting the complainant in the face)[4] and
prior misdemeanor convictions for riot, deadly conduct, evading arrest/detention,
and criminal trespass; (2) the fact that Overton was arrested with a greater
quantity of cocaine than anyone before in Navarro County (according to the
detective’s recollection); (3) the negative impact of drugs in the community;
and (4) the handgun found in the trunk.

            In closing argument, Overton’s counsel
commented that there was no evidence connecting Overton to the handgun and that
the jury should not just assume it was his because he was carrying drugs.  He
asked for a minimum sentence because this was Overton’s first drug-related
conviction.  The prosecutor emphasized Overton’s prior convictions, focusing in
particular on his conviction for shooting someone in the face, which, in the
prosecutor’s words, established him as “a dangerous guy.”  The prosecutor
encouraged the jury to consider the quantity of cocaine seized, the handgun
found in the trunk, and the negative impact of drugs in the community, and,
although he mentioned the handgun three times during his closing argument, he
placed the greatest emphasis on this being the largest cocaine arrest in county
history, Overton’s prior convictions (all from Navarro County), and the
negative impact of drugs in the community.

            Though the punishment of seventy-five
years’ imprisonment and a $10,000 fine is at the high end of the applicable
range, the jury had ample legitimate grounds for assessing this punishment, and
the prosecutor did not place excessive emphasis on the handgun evidence.  Thus,
having reviewed the record as a whole, we have fair assurance that the
erroneous admission of the handgun evidence did not have a substantial and
injurious effect or influence in determining the jury’s verdict at the
punishment phase.  See Garcia v. State, 126 S.W.3d 921, 927-28 (Tex. Crim. App. 2004); Bain v. State, 115 S.W.3d 47, 51-52 (Tex. App.—Texarkana 2003,
pet. ref’d); see also Peters, 93 S.W.3d at 354-55 (improper admission of
evidence regarding sawed-off shotgun did not affect verdict of guilt even
though prosecutor referred to this evidence in closing argument).  Accordingly,
we overrule Overton’s third issue.

We affirm the judgment.

 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief
Justice Gray concurs in the judgment without issuing a separate opinion)

Affirmed

Opinion delivered and
filed February 13, 2008

Do not publish

[CRPM]

 

              









[1]
              Because of Overton’s guilty
plea, all the evidence was introduced during the punishment phase.





[2]
              However, Overton did not ask
the court to strike Turner’s initial response that drug dealers don’t want to
meet in Collin County “[b]ecause of the sentences they get.”





[3]
              The United States Supreme
Court was quoting its earlier decision in Enmund v. Florida.  See
Booth v. Maryland, 482 U.S. 496, 502, 107 S. Ct. 2529, 2533, 96 L. Ed. 2d 440
(1987) (quoting Enmund v. Florida, 458 U.S. 782, 801, 102 S. Ct. 3368, 3378, 73 L. Ed. 2d 1140 (1982)).





[4]
              The prosecutor characterized
the shooting in this manner in his questions but the witness being questioned
about the prior conviction observed that the documentation offered in evidence
does not indicate where the complainant was shot.