ACCEPTED
06-15-00082-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
7/30/2015 10:39:48 PM
DEBBIE AUTREY
CLERK

CASE NO. 06-15-00082 CR

In The

RECEIVED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS

7/31/2015 9:05:00 AM

DEBBIE AUTREY
Clerk

COURT OF APPEALS
SIXTH DISTRICT OF TEXAS
AT TEXARKANA

_____

FRED DOUGLAS MOORE, JR., Appellant

VS.

THE STATE OF TEXAS, Appellee

On Appeal from 196th Judicial District Court
of Hunt County, Texas
Trial Court Cause No. 29,762
Honorable J. Andrew Bench, Judge Presiding

**APPELLANT'S BRIEF**
_____

TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:

Comes now the Appellant and submits this brief pursuant to the provisions of the

Texas Rules of Appellate Procedure in support of his request for the judgment of

conviction to be overturned in Cause No. 06-15-00082

Oral Arguments Requested

# IDENTITY OF PARTIES AND COUNSEL

Appellant's Attoreny:
Jessica Edwards
P.O. Box 9318
Greenville, TX 75404

Appellant's Attorney at Trial:
Katherine Ferguson
2900 Lee Street #102
Greenville, TX 75401

Appelle:
The State of Texas by and through
Noble D. Walker
Hunt County District Attorney
4th Floor Hunt County Courthouse
2507 Lee Street
Greenville, TX 75401

Appellee's Attorney at Trial:
Jeffery Kovach
Assistant Hunt County Attorney's
4th Floor Hunt County Courthouse
2507 Lee Street
Greenville, TX 75401

## TABLE OF CONTENTS

Identity of Parties and Counsel                         2

Table of Contents                                       3

Index of Authorities                                    7

Statement of the Case                                   7

Issues Presented                                        7

Statement of Facts                                      7

Point of Error Number One                              10

Point of Error Number Two                              15

Point of Error Number Three                            19

Prayer for Relief                                      21

Certificate of Service                                 22

Certificate of Compliance                              22

# LIST OF AUTHORITIES

**Case Authority**                                                                           **Page(s)**

**Federal Cases**

*California v. Green,* 399 U.S. 149 (1970)                                                            10

*Davis v. Alaska,* 415 U.S. 305 (1974)                                                               10

*DePetris v. Kuykendall,* 239 F.3d 1057,  (9th Cir. 2001)                                           13

*Jackson v. Virginia,* 443 U.S. 307 (979)                                                            20

*Pointer v. Texas* 380 U.S. 400 (1965)                                                               10

*U.S. v. Lopez,* 970 F.2d 583 (1992)                                                                 13

*Washington v. State,* 388 U.S. 14; 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967)     12


**State Cases**

*Campbell v. State,* 571 S.W.2d 161 (Tex. Crim. App. 1978)                                           17

*Easterling v. State,* 710 S.W.2d 569 (Tex. Crim. App. 1986)                                         11

*Ex parte Amador*, 326 S.W.3d 202  (Tex. Crim. App. 2010)                                            16

*Ex parte Watson*, 306 S.W.3d 259 (Tex. Crim. App. 2009)                                             16

*Goad v. State,* 354 S.W.3d 443 (Tex. Crim. App. 2011)                                               16

*Griffin v. State,* 614 S.W.2d 155 (Tex. Crim. App. 1981)                                            17

*Gutierrez v. State,* 764 S.W.2d 796 (Tex. Crim. App. 1989)                                          10

*Guzman v. State*, 188 S.W.3d 185 (Tex. Crim. App. 2006)                                             16

*Hall v. State*, 225 S.W.3d 524 (Tex. Crim. App. 2007)                                               16

*Hayward v. State*, 158 S.W.3d 476 (Tex. Crim. App. 2005)    16

*Laster v. State,* 275 S.W.3d 512 (Tex. Crim. App. 2009)    20

*McKithan v. State*, 324 S.W.3d 582 (Tex. Crim. App. 2010)    16

*Moody v. State,* 827 S.W.2d 875 (Tex. Crim. App. 1992)    12

*Parr v. State,* 658 S.W.2d 620 (Tex. Crim. App. 1983)    17

*Potier v. State,* 68 S.W.3d 657 (Tex. Crim. App. 2002)    12

*Rice v. State*, 333 S.W.3d 140, 146 (Tex. Crim. App. 2011)    16

*Ransom v. State,* 789 S.W.2d 572 (Tex. Crim. App. 1989)    11

*Rousseau v. State,* 855 S.W.2d 666 (Tex.Crim. App. 1993)    15, 16

*Royster v. State,* 622 S.W.2d 442 (Tex. Crim. App. 1981)    16

*Salinas v. State*, 163 S.W.3d 734 (Tex. Crim. App. 2005)    16

*Saunders v. State,* 840 S.W.2d 390 (Tex. Crim. App. 1992)    17

*Segundo v. State*, 270 S.W.3d 79 (Tex. Crim. App. 2008)    16

*Virts v. State,* 739 S.W.2d 25 (Tex. Crim. App. 1984)    10

*Vodochodsky v. State,* 158 S.W.3d 502 (Tex. Crim. App. 2005)    20

*Washington v. State,* 127 S.W.3d 197 (Tex. App. Houston [1ˢᵗ Dist. ] 2003)    20

**Constitutional Provisions**

U.S. Const., Amend IV    10

**Statute and Rules**

Tex.R. of App. Pro. 44.2(a)    12

Tex. Code Crim. Pro. Article 37.09    15, 16

Tex. R. Evid. 608(a)                                         11

Tex. R. Evid. 608(b)                                         11

TEX. R. EVID. 610(b)                                         11

Tex. Penal Code. Sec. 29.02                                  17

## STATEMENT OF THE CASE

This is an appeal of judgment and sentence in a criminal case from the 196th Judicial District Court  in Hunt County, Texas.  Appellant was convicted by a jury of Robbery on April 21, 2015.  On April 22, 2015, the jury assessed Appellant's punishment at 12 years in the Texas Department of Criminal Justice, Institutional Division.

## ISSUES PRESENTED

### Point of Error No. 1:

The court erred by not allowing Appellant to cross-examine the State's complaining  witness with regard to the said witnesses history of allowing people to steal from the store while on duty and for not allowing evidence about said witness' truthfulness. Said error was so egregious as to  violated Appellant's sixth amendment right to confront his accusers and his due process of law.

### Point of Error No. 2:

The court erred in failing to give a jury instruction on the requested lesser included offense as said charge was raised by the evidence and it was a valid rational alternative to the offense charged.

### Point of Error No. 3:

The evidence is legally insufficient to prove Appellant guilty of Robbery.

## STATEMENT OF FACTS

On March 16, 2014, Andres Hernandez was working as a clerk at Mr. J's Food Store in Greenville, TX. (R.R. 3, p. 20).  Mr. Hernandez identified Appellant as a customer of Mr. J's who had been to the store on multiple occasions. (R.R. 3, p. 21). Mr. Hernandez stated that Appellant came in to Mr. J's on March 16,  was identifying himself

as Jesus Christ and speaking in a Jamaican accent. (R.R. 3, p. 27). Mr. Hernandez said he found Appellant's behavior belligerent and Mr. Hernandez tired to get Appellant to leave the store. (R.R. 3, p. 27-28). At some point during the interaction, Appellant and Mr. Hernandez shook hands and Appellant headed to the door. (R.R. 3, p. 28). Mr. Hernandez testified that, as Appellant shook his hand, Appellant reached under the counter. (R.R. 3, p. 28). When asked by the State what what Appellant took when he reached under the counter, Mr. Hernandez replied, "He grabbed I believe it was forty dollars." (R.R. 3. p. 28).

The State introduced State's Exhibit 1, the video surveillance footage from Mr. J's of the incident in question. A review of State's Exhibit 1 does not support the testimony provided by by Mr. Hernandez as the video does not reflect the person identified as Appellant reaching under the counter as Mr. Hernandez shook his hand as described in Mr. Hernandez's testimony.

Mr. Hernandez testified the next thing he did was attempt to go for his baseball bat, but he was unable to reach it. (R.R. 3, p. 29). Mr. Hernandez testified that he then picked up the phone and told Appellant that he was calling the police, at which, according to Mr. Hernandez, Appellant reached for the money, Mr. Hernandez tried to grab Appellant, and then Appellant ran off with forty dollars. (R.R. 3, p. 29). When asked by the State whether he was hurt during the interaction, Mr. Hernandez testified "on my shin and on my arm." (R.R. 3 p. 29).

Mr. Hernandez testified during the interaction, Appellant never threatened him and

that he never felt threatened by Appellant (R.R. 3. p. 38-39). Mr. Hernandez further testified that Appellant did not make any aggressive moves towards him and that he, Mr. Hernandez, was the one to make physical contact in the interaction. (R.R. 3 p. 43). According to Mr. Hernandez, at no time during the interaction did Appellant try to hit, kick or any any other way physically harm Mr. Hernandez. (R.R. 3, p. 43). On cross-examination by Appellant's trial counsel, Mr. Hernandez testified that there would not have been any physical contact had Mr. Hernandez not grabbed appellant. (R.R. 3, p. 44-45).

Trial attorney for Appellant attempted to ask questions of Mr. Hernandez, regarding the reasons for him being released from employment at Mr. J's, which drew an objection from the State. (R.R. 3, p. 32). The Court then had a hearing outside the presence of the jury in which Appellant's trial counsel questioned Mr. Hernandez about the reasons for him being discharged from his employment, and his interactions with customers during the course of his duties, specifically whether he had allowed customers to steal from Mr. J's in the course of his job. (R.R. 3, p. 34-36). The Court refused to allow Appellant to present the proffered testimony in front of the jury. (R.R. 3, p. 36).

Appellant's trial attorney also attempted to ask questions of Jasmeet Sachdeva, the owner of Mr. J's Food Store and Andres Hernandez's employer at the time of the incident, as to the facts surrounding Mr. Hernandez's separation from Mr. J's Food Store in a hearing outside the presence of the jury. (R.R. 3, p. 116). Appellant's attorney put evidence on the record that Mr. Hernandez, while in the course of his normal duties of

employment, had allowed persons to steal from the store prior to the incident at bar. (R.R. 3, p. 117-118). Appellant's attorney put testimony on the record show that Mr. Hernandez had himself been stealing from his employer and that he was a dishonest and untrustworthy person. (R.R. 3 p. 118-119). The court ruled that said testimony was inadmissible and did not allow Appellant to present this evidence to the jury. (R. R. 3, p. 120-121).

## POINT OF ERROR NUMBER ONE

The Sixth Amendment of the United States Constitution guarantees every person accused of a crime the right to confront their accusers. The Court of Criminal Appeals has "often stated and discussed the fact that one of the greatest constitutional rights that an accused person might have is the right to confront and cross-examine the State's witnesses." *Virts v. State,* 739 S.W.2d 25, 29 (Tex. Crim. App. 1984). "It cannot seriously be doubted at this late date that the right of cross-examination is included in the right of an accused in a criminal case to confront the witnesses against him. And probably no one, certainly no one experienced in the trial of lawsuits, would deny the value of cross-examination in exposing falsehood and bringing out the truth in the trial of a criminal case." *Pointer v. Texas* 380 U.S. 400, 404 (1965).

Courts across the Nation have held repeatedly that cross-examination is an indispensable tool in seeing that justice is done. Cross-examination is the "greatest legal engine ever invented for the discovery of truth." *California v. Green,* 399 U.S. 149, 158 (1970). "Cross-examination is the principle means by which the believably of a witness

and the truth of his testimony are tested." *Davis v. Alaska,* 415 U.S. 305, 316 (1974).

"Cross-examination is the cornerstone of the criminal trial process and, as such, a defendant must be given wide latitude to explore a witness' story, to test the witness' perceptions and memory, and to impeach his or her credibility." *Gutierrez v. State,* 764 S.W.2d 796,799 (Tex. Crim. App. 1989).

When a defendant complains that his cross-examination of a witnesses has been improperly limited by the court, the defendant must preserve said error by creating a bill of exception including the questions he would ask and the answers to said questions. *Easterling v. State,* 710 S.W.2d 569. 578 (Tex. Crim. App. 1986).

The Texas Rules of Evidence outline the methods by which cross-examination is conducted. Texas Rule of Evidence 610(b) provides that a witness may be cross-examined on any matter relevant to any issue, including credibility. To impeach a witness, a Defendant may produces proof that a witness is unworthy of belief or credibility. *Ransom v. State,* 789 S.W.2d 572, 587 (Tex. Crim. App. 1989) *cert. Denied.*

"The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to the character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise," Tex. R. Evid. 608(a). Texas Rule of Evidence 608(b) goes on to say that " specific instances of conduct of a witness, for the purpose of attacking or supporting his credibility, other than convictions of a crime as

provided in Rule 609, may not be inquired into on cross-examination of the witness, nor proved by extrinsic evidence."

Rule 608(b) is very restrictive and allows for no exceptions, nevertheless, constitutional considerations must be kept in mind when evaluating the application of this rule. Specifically, the constitutional right to confront one's accuser must include the right to expose bias, prejudice, motivation for testifying and the credibility of the accuser. In *Moody v. State,* 827 S.W.2d 875 (Tex. Crim. App. 1992) the Court held that Rule 608(b) could not be applied so as to strip a defendant of his constitutional right to confront his accuser.

There is precedent at the highest level of our state and federal courts for the fact that a error in excluding evidence based on a rule of evidence may rise to the level of denial of a constitutional right. See *Potier v. State,* 68 S.W.3d 657 (Tex. Crim. App. 2002) where the Texas Court of Criminal Appeals recites a list of United States Supreme Court cases in which errors in rulings based on exclusionary rules of evidence resulted in constitutional errors. The litany of cases in *Potier* stands for the proposition that, while the State can create rules to guide the admission of evidence, said rules cannot go so far as to interfere with a defendant's constitutional rights. The Supreme Court of the United States has held that the Framers of the Constitution did not intend to commit the futile act of giving to a defendant the rights to secure the attendance of witnesses whose testimony he had no right to use. *Washington v. State,* 388 U.S. 14, 23; 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). It is clear that rules of evidence that are applied disproportionately to their

purpose may offend the Constitution. *Pointer* at 622.

## Standard of Review

Texas Rule of Appellate Procedure 44.2(a) states; "If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment."

While it is true that erroneous evidentiary rulings rarely rise to the level of denying the fundamental constitutional rights, such a ruling can rise to that level if the defendant can demonstrate that the evidence excluded was important to his defense. *U.S. v. Lopez,* 970 F.2d 583, 588 (1992). While courts have dealt with whether the exclusion of evidence rises to the level of constitutional error in different ways, Courts have repeatedly held that if evidence was crucial to a defendant's ability to defend himself against the charge, the the exclusion of such evidence violates the defendant's constitutional right to due process of law. *DePetris v. Kuykendall,* 239 F.3d 1057, 1062-1063 (9th Cir. 2001).

## Argument

The case at bar does not concern some distant or remote bad act that was proffered to impeach the accuser's credibility. Instead, we have facts and circumstances that are intertwined with and related to the facts used by the State to convict Appellant. Whether or not the victim alleged in the indictment had allowed Appellant or others to take things

from the store prior to this incident is wholly relevant to the issue of consent. By denying Appellant the right to present such evidence, the trial court denied Appellant the right to present his defense, which raises the error to the level of a constitutional violation.

The testimony from Jasmeet Sachdeva , the owner of the store in Appellant's bill of exception indicates that Mr. Hernandez, the victim and sole eyewitness to the robbery, had allowed multiple individuals to take items from Mr. J's food store. (R.R. 3, 9. 116-119). By not allowing the testimony before the jury, the trial court stripped from Appellant his ability to argue that the taking of items, if any, from the store was a result of the the implied consent of Mr. Hernandez as he had allowed such things to happen in the past. This evidence could reasonably have had a great deal of impact on the jury and could have caused a reasonable fact-finder to have come to a different conclusion.

Additionally, Andres Hernandez was the sole eye witness to the offense. The jury had to believe Mr. Hernandez that Appellant caused him pain to find the elements required for robbery. As Mr. Hernandez was the alleged victim and the sole witness to the issue of whether or not he experienced pain at the hands of Appellant during the interaction, Mr. Hernandez's credibility is of utmost importance. The fact that he is known to be a dishonest person was clearly information that would have impacted the jury. In the testimony of Mr. Sachdeva in Appellant's bill of exception, evidence was presented in regards to Mr. Hernandez's credibility as an honest person. (R.R. 3, p. 116-119). Again, these are not abstract, remote or irrelevant fact situations upon which this evidence is based. These are facts and circumstances that are clearly relevant to the

interactions between Appellant and Mr. Hernandez on the night in question.

By refusing to allow Appellant to present said evidence, the court ham-strung Defense counsel's ability to adequately and thoroughly cross-exam Mr. Hernandez and Mr. Sachdeva. Indeed, the court's error in preventing said testimony from being presented denied Appellant of his 6th Amendment right to confront his accusers and essentially denied him of his 5th Amendment right to effective representation of counsel by denying trial counsel multiple avenues of questioning and argument including consent and the credibility of the primary accuser. There error is clearly harmful to Appellant as this information would no doubt have had an impact on a rational jury and very certainly would have resulted in a different outcome.

While not every error in excluding evidence rises to the level of constitutional error, it is clear from the record that this evidence was vital to Appellant's defense. The evidence was so crucial to Appellant's defense that Appellant's trial counsel made two separate bills of exception to preserve said evidence to show its importance. The trial court's exclusion of the proffered evidence was not merely an evidentiary error, but one of constitutional dimensions. The ruling went to the heart of the defense and prevented Appellant from arguing his defense of implied consent and additionally prevented him from showing the lack of credibility of the State's star witness.

### POINT OF ERROR NUMBER TWO

The court erred in failing to give a jury instruction on the lesser included offense as it said charge was raised by the evidence and it was a valid rational alternative to the offense charged.

### The Law

Article 37.09 of the Texas Code of Criminal Procedure defines a lesser included offense as being established if "it is established by proof of the same or less than all the facts required to establish the commission of the offense charged." To determine whether the lesser-included offense instruction requested by appellant should have been given, the Court follows a two-step analysis. *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim. App. 1993); *Royster v. State*, 622 S.W.2d 442, 446 (Tex. Crim. App. 1981). The first step asks whether the lesser-included offense is included within the proof necessary to establish the offense charged. *McKithan v. State*, 324 S.W.3d 582, 587 (Tex. Crim. App. 2010). Courts will then compare the statutory elements and any descriptive averments in the indictment for the greater offense with the statutory elements of the lesser-included offense. *Ex parte Amador*, 326 S.W.3d 202, 206 n.5 (Tex. Crim. App. 2010); *Ex parte Watson*, 306 S.W.3d 259, 263 (Tex. Crim. App. 2009); *Hall v. State*, 225 S.W.3d 524, 535–36 (Tex. Crim. App. 2007); see also Tex. Code Crim. Prl, art. 37.09. This step is a question of law. Hall, 225 S.W.3d at 53.

In the second step of the analysis, the Court considers whether evidence in the record would permit a jury to rationally find appellant was guilty of only the lessor included and not the original charge in the indictment. *Guzman v. State*, 188 S.W.3d 185, 188–89 (Tex. Crim. App. 2006); *Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005). The evidence must establish the lesser-included offense as "a valid rational alternative to the charged offense." *Segundo v. State*, 270 S.W.3d 79, 91 (Tex. Crim. App. 2008); see also *Rice v. State*, 333 S.W.3d 140, 146 (Tex. Crim. App. 2011).

In this review, Appellate Courts consider all of the evidence presented at trial. *Hayward v. State*, 158 S.W.3d 476, 478–79 (Tex. Crim. App. 2005); *Rousseau,* 855 S.W.2d at 673. Anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser-included offense charge. *Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011). In determining whether the evidence raises the requested lesser-included offense, Courts do not consider the credibility of the evidence or whether it conflicts with other evidence. S*aunders v. State,* 840 S.W.2d 390, 391 (Tex. Crim. App. 1992).

## Argument

An analysis of the elements makes it clear that theft of property is a lesser-included offense of Robbery. Additionally, the Court of Criminal Appeals has held such numerous times. *Campbell v. State,* 571 S.W.2d 161 (Tex. Crim. App. 1978); *Griffin v. State,* 614 S.W.2d 155 (Tex. Crim. App. 1981); *Parr v. State,* 658 S.W.2d 620 (Tex. Crim. App. 1983). The first prong of the test being satisfied, we must now turn our attention to the second prong to determine if the evidence establishes that the lesser-included is a valid rational alternative to the charged offense.

The evidence clearly shows that, if an offense was committed at all, the offense was theft and not robbery. There is no evidence whatsoever in the record to show that Appellant caused any injury to the alleged victim during the course of the interaction that lead to Appellant's indictment and conviction.

Texas Penal Code Section 29.02 defines robbery as an offense if "in the course of

committing theft....and with intent to obtain or maintain control of the property he; 1) intentionally, knowingly or recklessly causes bodily injury to another; or 2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." The record is unequivocal, based on the alleged victim's own testimony, that Appellant did not make any threats or put the alleged victim in imminent fear. (R.R. 3 p. 38-39). Additionally, the evidence is devoid of any evidence that Appellant intentionally, knowingly or recklessly caused any bodily injury to Andres Hernandez.  The testimony from Mr. Hernandez, the victim alleged in the indictment, is that Appellant never hit, kicked or in any other way physically harm to the victim and that the victim started the physical interaction. (R.R. 3, p. 43).  The description of the encounter from Hernandez was that he, Mr. Hernandez, "went to grab him. And he (Appellant) ran off with $40." (R.R. 3, p. 29). When asked by the State "Did you get hurt at all during this?" Mr. Hernandez replied, "On my shin and on my arm." (R.R. 3, p. 29).  Mr. Hernandez never states that Appellant was the cause of said injury to his shin and his arm.  The injury to Mr. Hernandez's shin and arm could have just as reasonably been caused by Mr. Hernandez's own actions given the testimony that he was the person who made the first physical contact. (R.R. 3, p. 43).  The evidence is woefully inadequate to support a finding that Appellant intentionally, knowingly or recklessly caused bodily injury to Mr. Hernandez.

A review of the video tape of the incident, State's Exhibit 1, is equally devoid of evidence to support the State's argument that Appellant intentionally, knowingly or

recklessly caused bodily injury to Mr. Hernandez. A review of State's Exhibit 1 reveals the person identified as Appellant coming into the camera frame at 17 minutes and 25 seconds into the video. Mr. Hernandez and the person identified as Appellant have a conversation until 18 minutes and 25 seconds into the video, when the person identified as Appellant walks out of the camera frame. The person identified as Appellant reappears in the camera frame at 19 minutes and 19 seconds into the video, has a brief conversation with Mr. Hernandez, and exits the video frame at 19 minutes and 33 seconds into the video. The person identified as Appellant reappears at 21 minutes and 52 seconds into the video, at which time we observe the interaction that is the core of the State's charge against Appellant. A careful review of State's Exhibit 1 shows that, just as Mr. Hernandez testified, (R.R. 3 p. 43), the person identified as Appellant never hits, kicks or in any other way attempts to physically harm Mr. Hernandez. State's Exhibit 1 shows the person identified as Appellant reach under the counter, at which time Mr. Hernandez grabs the person identified as Appellant and puts his arms around him. The video shows the person identified as Appellant attempt to pull his body away from Mr. Hernandez and flee from the store. The video in State's Exhibit 1 reflects aggressive actions on the part of Mr. Hernandez, but no such aggressive actions on the part of the person identified as Appellant. State's Exhibit 1 supports the alternative

Given the evidence introduced at trial, the denied lesser-included office is a valid rational alternative to the charged offense. It was error for the trial court to deny the lessor included charge to the jury.

## POINT OF ERROR NUMBER THREE

The evidence is legally insufficient to find Appellant guilty of Robbery.

## The Law

In a criminal case, an appellant may raise legal sufficiency for the first time on appeal. *Washington v. State,* 127 S.W.3d 197 (Tex. App. Houston [1st Dist. ] 2003, pet. Dism'd).  When reviewing legal sufficiency of the evidence, a court must look at all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense were proven beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319; *Vodochodsky v. State,* 158 S.W.3d 502 (Tex. Crim. App. 2005).  While giving the proper deference to the factfinder's role, this court must safegauard against the rare occurrence when a factfinder does not act rationally. *Laster v. State,* 275 S.W. 3D 512 (Tex. Crim. App. 2009).

## Argument

As argued in Point of Error number two, the evidence in the record is insufficient to prove Appellant harmed Andres Hernandez during the course of committing theft.  As argued above, the record is unequivocal, based on the alleged victim's own testimony, that Appellant did not make any threats  or put the alleged victim in imminent fear. (R.R. 3 p. 38-39).  Additionally, the evidence is devoid of any evidence that Appellant intentionally, knowingly or recklessly caused any bodily injury to Andres Hernandez.   The testimony from Mr. Hernandez, the victim alleged in the indictment, is that Appellant never hit, kicked or in any other way physically harm to the victim and that the victim started the

physical interaction. (R.R. 3, p. 43). The description of the encounter from Hernandez was that he, Mr. Hernandez, "went to grab him. And he (Appellant) ran off with $40." (R.R. 3, p. 29). When asked by the State "Did you get hurt at all during this?" Mr. Hernandez replied, "On my shin and on my arm." (R.R. 3, p. 29). Mr. Hernandez never states that Appellant was the cause of said injury to his shin and his arm. The injury to Mr. Hernandez's shin and arm could have just as reasonably been caused by Mr. Hernandez's own actions given the testimony that he was the person who made the first physical contact. (R.R. 3, p. 43). The evidence is woefully inadequate to support a finding that Appellant intentionally, knowingly or recklessly injured Mr. Hernandez.

It is clear from the record that no rational trier of fact could have found the essential elements of the offense were proven beyond a reasonable doubt.

### PRAYER FOR RELIEF

For the reasons stated hereinabove, it is respectfully submitted that, upon appellate review, the Court of Appeals should affirm the judgment of conviction and sentence of the Trial Court.

Respectfully submitted,

/s/ Jessica Edwards
JESSICA EDWARDS
Attorney for Appellant
Fred Douglas Moore, Jr.
State Bar Number - 24000994
P.O. Box 9318

Greenville, Texas 75404
Telephone Number - (903) 513-0510
Facsimile Number - (903) 200-1359
jessicaedwardslaw@gmail.com

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of Appellant's Brief was served on the Hunt County District Attorney's Office through the efiletexas website on July 31, 2015.

/s/ Jessica Edwards
Jessica Edwards

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of Appellant's Brief was delivered to Appellant via certified mail to the Cole Unit; TDCJ-ID on July 31, 2015.

/s/ Jessica Edwards
Jessica Edwards

## CERTIFICATE OF COMPLIANCE

I certify that Appellant's Brief is written in Times New Roman font in 13 point text. Appellant's brief has 4860 works according to the word count feature on the undersigned attorneys word processing program.

/s/ Jessica Edwards
Jessica Edwards